TREG R. TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov

FENNEMORE CRAIG P.C.
Norman D. James (AZ Bar No. 006901)
Bradley J. Pew (AZ Bar No. 033876)
Tyler D. Carlton (AZ Bar No.035275)
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5000
Facsimile: (602) 916-5546
Email:  njames@fennemorelaw.com
          bpew@fennemorelaw.com
          tcarlton@fennemorelaw.com
(*pro hac vice applications forthcoming*)

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| State of Alaska; and North Slope Borough, | ) ) ) | Case No. _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| National Marine Fisheries Service, | ) ) ) | |
| Defendant. | ) ) ) | |

*State of Alaska v. National Marine Fisheries Service*
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page 1 of 27

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      Plaintiffs State of Alaska and North Slope Borough bring this action against Defendant National Marine Fisheries Service ("NMFS"), a federal agency within the National Oceanic and Atmospheric Administration, U.S. Department of Commerce.

2.      Plaintiffs bring this action for relief from NMFS's violations of Section 4 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*., and its implementing regulations, 50 C.F.R. Part 424, in issuing a negative 90-day finding ("Negative 90-Day Finding") on the petition ("Petition") submitted by the State of Alaska and the North Slope Borough[1] to delist the Arctic subspecies of ringed seal (*Phoca* [aka *Pusa*] *hispida hispida*) ("Arctic ringed seal") under the ESA.

3.      In their Petition, Plaintiffs provided substantial scientific information bearing on the biological status of the Arctic ringed seal, including analysis based on new climate change projections by the Intergovernmental Panel on Climate Change ("IPCC") and peer-reviewed publications containing relevant information on Arctic ringed seal biology that became available since the Arctic ringed seal was listed in 2012, which indicated that delisting of the Arctic ringed seal may be warranted.  NMFS, however, asserted that the Petition's information and analysis was not new—although it plainly post-dated the agency's listing determination—and on that basis concluded that the

---

[1] The Petition was submitted by the State of Alaska, the North Slope Borough, the Iñupiat Community of the Arctic Slope, and the Arctic Slope Regional Corporation.

*State of Alaska v. National Marine Fisheries Service*
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF           Page 2 of 27

Petition did not present substantial scientific information indicating that a review of the Arctic ringed seal's biological status was warranted.

4.       NMFS's Negative 90-Day Finding conflicted with the ESA and its implementing regulations, which require only that a petitioner "submit credible scientific or commercial information in support of the petition's claims such that a reasonable person conducting an impartial scientific review would conclude that the action proposed in the petition *may* be warranted." 50 C.F.R. § 424.14(h)(i) (emphasis added). Plaintiffs were not required to provide conclusive evidence to obtain a review of the Arctic ringed seal's status, nor were they requited to demonstrate that the 2012 listing data and analysis were erroneous. The standard for a positive 90-day finding under the ESA is relaxed. *See, e.g.*, *Ctr. for Bio. Diversity v. Morgenweck*, 351 F. Supp. 2d 1137, 1141 (D. Colo. 2004); *Moden v. U.S. Fish and Wildlife Serv.*, 281 F. Supp. 1193, 1203 (D. Ore. 2003).

5.       In listing the Arctic ringed seal as a threatened species in 2012, NMFS determined that the principal threat to the species is habitat alteration stemming from climate change, relying heavily on the climate projections in the IPCC's Fourth Assessment Report (2007). Yet in making the 90-Day Finding, NMFS failed to evaluate the species' status using the more recent analysis of projected climate change presented in the IPCC's Fifth Assessment Report (2013), or to consider scientific data on the responses to ringed seals to observed habitat loss since the 2012 listing. Thus, by issuing the Negative 90-Day Finding, and therefore not proceeding with a status review, NFMS improperly disregarded more current and better scientific information and data regarding the Arctic ringed seal.

6.     NMFS's Negative 90-Day Finding therefore violated the ESA, 16 U.S.C.

§ 1531 *et seq*., and is arbitrary, capricious, an abuse of discretion, and not in accordance

with the law, in excess of statutory authority, and without observance of the procedure

required by law.  5 U.S.C. § 706(2).  To the extent NMFS has failed to act, that action is

unlawfully withheld or unreasonably delayed.  *Id.* § 706(1).

7.     The Plaintiffs seek declaratory and injunctive relief setting aside the

Negative 90-Day Finding and remanding the Petition to NMFS to conduct an appropriate,

lawful review of the biological status of the species pursuant to Section 4 of the ESA and

its implementing regulations, using current scientific information and data concerning the

Arctic ringed seal.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

(federal question), 28 U.S.C. § 1346 (United States as a defendant), and 28 U.S.C.

§§ 2201-2202 (declaratory and injunctive relief), 16 U.S.C. § 1540(c) and (g) (action

arising under the ESA citizen suit provision).

9.     The Negative 90-Day Finding is a final agency action for which Plaintiffs

have a right of judicial review under the judicial review provisions of the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

10.     The Court has authority to grant Plaintiffs' requested relief pursuant to

28 U.S.C. §§ 2201, 2202 (declaratory and injunctive relief), 5 U.S.C. § 706 (APA), and

16 U.S.C. § 1540(g) (ESA).

11.     Pursuant to the ESA, Plaintiffs sent Defendant a sixty-day notice of its intent to sue ("Notice") on June 28, 2021. *See* 16 U.S.C. § 1540(g)(2).

12.     Defendant received Plaintiffs' Notice and, in fact, responded to it in a letter dated July 13, 2021.

13.     More than sixty days have passed since Defendant received Plaintiffs' Notice.  However, Defendant has not remedied the ESA and APA violations described in the Notice. Therefore, an actual controversy exists between the parties.

14.     Pursuant to 28 U.S.C. § 1391(e), venue lies in this judicial district because members of the Arctic ringed seal population are found within the District of Alaska, and based on the species' listing, NMFS has designated millions of acres of Alaska as critical habitat for the species, including coastal and marine waters in the Bering, Chukchi, and Beaufort Seas.

## PARTIES

15.     Plaintiff State of Alaska is a sovereign state with the inherent authority to manage wildlife populations within its borders.  The State participated in all aspects of the administrative process leading to the listing of Arctic ringed seals under the ESA, and properly submitted the Petition to delist that species as well as the Notice submitted pursuant to the ESA citizen suit provision.

16.     Plaintiff North Slope Borough is the northernmost borough in the State of Alaska and it borders on the Beaufort and Chukchi Seas.  The North Slope Borough participated in the submission of the Petition, and joined in the Notice.

17.     The listing of the Arctic ringed seal and, based on that listing, the recent designation of hundreds of millions of acres of Alaska as critical habitat for the species, including coastal and marine waters in the Bering, Chukchi, and Beaufort Seas, directly interferes with lawful activities occurring in Alaska and conducted by its citizens, including activities within the North Slope Borough.  These activities include oil and gas exploration and production, mining and mineral production, navigation dredging, in-water construction activities, commercial fishing, and subsistence hunting and fishing.

18.     Accordingly, Plaintiffs have each suffered actual, concrete injuries as a result of Defendant's failure to comply with the requirements of the ESA.  In bringing this lawsuit, Plaintiffs seek to compel Defendant to remedy its violations and issue a revised 90-day finding under ESA Section 4(b)(3)(A).

19.     Defendant NMFS is part of the federal National Oceanic and Atmospheric Agency, of the United States Department of Commerce.  NMFS is generally responsible for the administration of the ESA with respect to marine resources and has jurisdiction over approximately 165 marine species listed as endangered or threatened, including the Arctic ringed seal.  NMFS conducted the rulemaking under ESA Section 4 that listed the Arctic ringed seal in 2012, and issued the Negative 90-Day Finding that is the subject of this case.

## GENERAL ALLEGATIONS REGARDING THE LISTING PROCESS UNDER THE ENDANGERED SPECIES ACT

20.    The ESA is a comprehensive federal statute that is intended to conserve species of wildlife, fish, and plants that are currently in danger of extinction or are likely to become so in the foreseeable future.

21.    For a marine species to be subject to the ESA's protections, the species must first be listed by NMFS as either "endangered" or "threatened."  *See* 16 U.S.C. § 1533(a)–(c).  Under the ESA, a species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6).  A species is considered to be "in danger of extinction" if the species is currently on the brink of extinction in the wild.  By contrast, a species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

22.    The rulemaking process by which NMFS makes listing determinations is set forth in ESA Section 4 and the regulations codified at 50 C.F.R. Part 424.  NMFS's determination regarding whether a species is endangered or threatened must be made "solely on the basis of the best scientific and commercial data available[.]" *Id.* § 1533(b)(1)(A); *see also* 50 C.F.R. § 424.11(b).  The Supreme Court has explained that this requirement is intended to ensure that decisions are not made on "the basis of speculation or surmise." *Bennett v. Spear*, 520 U.S. 154, 176 (1997).

23.    NMFS issued its final rule listing the Arctic population of ringed seal as a "threatened" species under the ESA on December 28, 2012.  *See* Threatened Status for

the Arctic, Okhotsk, and Baltic Subspecies of the Ringed Seal and Endangered Status for the Lagoda Subspecies of the Ringed Seal, 77 Fed. Reg. 76706 (Dec. 28, 2012) ("Listing Rule"). The Listing Rule became effective on February 26, 2013. *Id.*

24.     The ESA gives interested persons the right to submit a written petition to NMFS to remove a species from the lists of endangered and threatened species or to change the listed status of a species if delisting or down-listing[2] is warranted. 16 U.S.C. § 1533(b)(3); 50 C.F.R. § 424.14.

25.     Within 90 days of receipt of a petition seeking to change a species' ESA listing status, NMFS must, "to the maximum extent practicable," make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). If NMFS determines in a "90-day finding" that the petition does not present substantial information indicating that the petitioned action may be warranted, the petition is denied, and the process concludes. The "negative" 90-day finding is final agency action and subject to judicial review. *Id.* § 1533(b)(3)(C)(ii).

26.     NMFS has acknowledged that there is a lower evidentiary standard for a 90-day finding, explaining in the Negative 90-Day Finding that "[w]e do not conduct additional research, and we do not solicit information from parties outside the agency to help us in evaluating the petition." 85 Fed. Reg. at 76,020; *see also* Revisions to the

---

[2] "Down-listing" is the process of a change in status from "endangered" to "threatened." Delisting results in the complete removal of the species from the list of threatened or endangered species.

Regulations for Petitions, 81 Fed. Reg. 66,462, 66,480 (Sept. 27, 2016) ("The Act contemplates a two-step process for reviewing a petition. The 12-month finding is meant to be the more in-depth determination and follows a status review, while the 90-day finding is meant to be a quicker evaluation of a more limited set of information.").

27. The courts have likewise held that the "substantial scientific or commercial information" standard for a 90-day "may be warranted" determination "is not a rigorous one." *Buffalo Field Campaign v. Zinke*, 2018 WL 646887, at *2 (D.D.C. Jan. 31, 2018). The standard "is not overly-burdensome, does not require conclusive information, and uses the 'reasonable person' standard to determine whether substantial information has been presented." *Moden*, 281 F. Supp. 2d at 1204 (characterizing the standard as "non-stringent"). Moreover, if there is a conflict in the scientific evidence, the classifying government agency "must credit the [petition's] supporting evidence unless that evidence is unreliable, irrelevant, or otherwise unreasonable to credit." *Buffalo Field Campaign*, 2018 WL 646887, at *5 (citing *Humane Soc'y of United States. v. Pritzker*, 75 F. Supp. 3d 1, 14 (D.D.C. 2014)).

28. If NMFS determines that a petition does present substantial information indicating that delisting or down-listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." 16 U.S.C. § 1533(b)(3)(A). Upon completion of the status review, and within 12 months from the date on which it received the petition, NMFS must make a "12-month finding" on whether the species' continued listing is warranted or not warranted. *Id*. § 1533(b)(3)(B).

29.     If NMFS concludes in the 12-month finding that delisting is warranted, the agency must publish notice in the Federal Register of a proposed regulation to delist the species and take public comment on the proposed delisting determination. *Id*. § 1533(b)(3)(B)(ii). Thereafter, within one year of publication of the proposed delisting rule, NMFS must publish in the Federal Register its final delisting determination, unless the one-year period is extended to obtain additional data due to the existence of a substantial disagreement. *Id*. § 1533(b)(6)(A), (B).

30.     If NMFS concludes in the 12-month finding that delisting is not warranted, the petition process is concluded and a notice to that effect is published in the Federal Register. *Id*. § 1533(b)(3)(B)(i). The not-warranted finding is subject to judicial review. *Id*. § 1533(b)(3)(C)(ii).

## FACTUAL BACKGROUND

31.     The Arctic ringed seal is the most abundant of the ringed seal subspecies and has an extensive circumpolar distribution. The species is found in the Greenland Sea and Baffin Bay; Hudson Bay; the Beaufort and Chukchi seas; the White, Barents and Kara seas, the Russian Arctic coast and the Canadian Arctic Archipelago. The species' current population is estimated to be in the millions and is believed to be stable or increasing. *See*, *e.g.*, Listing Rule, 77 Fed. Reg. at 76716.

32.     Aerial surveys conducted in 2012 and 2103 estimated that there are 470,000 ringed seals in portions of the Chukchi and Beaufort seas and the U.S. portion of the Bering Sea alone. These areas constitute a small portion of the species' total global habitat.

33.     In spite of the Arctic ringed seal's extremely large population and circumpolar range, as well as its documented resilience to historical habitat and climate variation, NMFS listed the Arctic ringed seal as threatened under the ESA in 2012.  This listing was based on predictions that climate warming would cause decreases in sea ice extent, thickness, and duration, and reductions in snow cover on the sea ice in the Arctic region, purportedly resulting in a substantial decrease in the global ringed seal population by 2100.  Listing Rule, 77 Fed. Reg. at 76,706.  The scientific underpinning for the Listing Rule was NMFS's status review report on the ringed seal, issued in 2010 in conjunction with the proposed listing rule.[3]

34.     In its listing determination, NMFS used a subset of modeling provided by the IPCC's Fourth Assessment Report ("AR4") overlaid on limited knowledge of Arctic ringed seal biology, including the extent of the species' resilience to environmental change.  NMFS also used a limited set of emission scenarios from the AR4 Report, assessing only the intermediate and high emissions scenarios while excluding the low emissions scenario (despite its equally likely to occur).  Further, NMFS used the IPCC AR4 model to analyze possible sea ice extent up to the year 2100, erroneously setting this 88-year period as the "foreseeable future" required by statute for threatened species designation under the ESA.  *See* 16 U.S.C. § 1532(20) (definition of "threatened species").

---

[3] B. P. Kelly et al., *Status Review of the Ringed Seal (*Phoca hispida*)*, U.S. Dept. of Commerce, NOAA Tech. Memo. NMFS-AFSC-212 (2010) ("Kelley (2010)").

35.     Because a listing decision must be made solely on the basis of the best scientific and commercial data available, 16 U.S.C. §1533(b)(l)(A), and a pivotal part of a "threatened" listing decision is the agency's foreseeable future determination, 16 U.S.C. § 1532(20), the best scientific and commercial data pertinent to a foreseeable future determination must include all elements contributing to uncertainty and measures of confidence in projections of both (1) the threats facing the species and (2) the response of the species to those threats.  *See* 50 C.F.R. § 424.11(d).

36.     The data and climate model output used by NMFS in their projections for the threats facing the species and the response of the species to those threats were incomplete because NMFS failed to incorporate that incompleteness (i.e., the uncertainty in their projections arising from a lack of complete information) into their foreseeable future determination.  As a result, the projections NMFS used in its listing determination are highly suspect.  This is confirmed by the fact that (as stated in Section II.A.2 of the Notice) new research published in 2012 shows that the Arctic ringed seal populations are likely increasing in Hudson Bay, an area where sea ice coverage is decreasing.[4] Moreover, recent studies demonstrate that there is greater uncertainty in climate projections than acknowledged and considered by NMFS when the ringed seal was listed,

---

[4] Magaly Chambellant et al., *Temporal variations in Hudson Bay ringed seal (*Phoca hispida*) life-history parameters in relation to environment,* J. of Mammalogy 267-281 (2012) ("Chambellant (2012)").

which makes its use of 2100 as the foreseeable future inappropriate and scientifically indefensible.[5]

37.     Because of the Arctic ringed seal's extremely large population and its extremely large range, NMFS was unable to accurately estimate the long-term trend of the population when it listed the species in 2012.  Consequently, NMFS was unable to accurately predict whether the Arctic ringed seal would be facing extinction by 2100.

38.     When it listed the Arctic ringed seal, NMFS failed to expressly address the extent to which global warming would actually cause the loss of the Arctic ringed seal's habitat.  Instead, the agency addressed predicted habitat changes in very general terms and without specifically addressing the relationship between habitat changes and declines in the species' population.  *See generally* Kelly (2010).

39.     When it listed the Arctic ringed seal, NMFS failed to expressly address the extent to which global warming would reduce the species' population by 2100.  The agency did not estimate the Arctic ringed seal's minimum viable population and did not attempt to estimate whether and when that population would be reached as a result of global warming and other threats to the species.  *See generally* Kelly (2010).

40.     By contrast, in its 2013 listing determination for the ribbon seal (*Histriophoca fasciata*), the NMFS Biological Review Team estimated that there are

---

[5] *See* IPCC, *Climate Change 2013: The Physical Scientific Basis* 1005-7 (Cambridge University Press 2013).  This report provides a comprehensive assessment of the physical science basis of climate change since 2007 when the Fourth Assessment Report ("AR4") was released.

currently 267,000 ribbon seals and that there is a 17% chance that the species population will decline to a hypothetical minimum viable population threshold of 5,000 individuals before the end of the century.[6]

41. The Arctic ringed seal has a much larger population (several million individuals) and a much larger and more varied range than the ribbon seal, which primarily inhabits the Sea of Okhotsk, and the Bering and Chukchi seas. Consequently, it is unlikely that the Arctic ringed seal population will decline to the point that its population will no longer be viable by 2100. In that regard, the Ninth Circuit has explained: "A species with an exceptionally large historic range may continue to enjoy healthy population levels despite the loss of a significant amount of suitable habitat." *Defenders of Wildlife v. Norton*, 258 F.3d 1136, 1143 (9th Cir. 2001).

42. On March 26, 2019, the State of Alaska, Arctic Slope Regional Corp., Iñupiat Community of the Arctic Slope, and the North Slope Borough submitted their Petition to delist the Arctic ringed seal to NMFS. The Petition presented post-listing climate projections and related data, as well as substantial post-listing data on Arctic ringed seal biology, which conflicted with the 2012 "threatened" determination and indicated that NMFS erred in the confidence the agency placed in its long-term projections of climate change.

---

[6] P. L. Boveng et al., *Status Review of the Ribbon Seal (*Histriophoca fasciata*)*, NOAA Technical Memo. NMFS-AFSC-255 132-35 (2013) (analysis of demographic risks and extinction assessment).

43. On November 27, 2020, NMFS issued the Negative 90-Day Finding. *See* 90-Day Finding on a Petition to Delist the Arctic Subspecies of Ringed Seal under the Endangered Species Act, 85 Fed. Reg. 76,018 (Nov. 27, 2020). Despite several years of new scientific data and information on ringed seals, analysis of this information, and re-analyses of prior data presented in the Petition, NMFS found that "the petition does not present substantial new information or new analysis indicating that the scientific or commercial data considered in our listing determination, or the analytic methodology used in the determination, were in error." 85 Fed. Reg. at 76,027. But the standard for a 90-day finding is not whether the information presented in the petition indicates the data considered in the listing was "*in error*." The standard is whether a reasonable person conducting an impartial review would consider the petition to have presented substantial information indicating that the petitioned action may be warranted, as NMFS's own internal guidance on petitions explains.[7]

44. NMFS therefore erred in issuing the Negative 90-Day finding because substantial new data on the Arctic ringed seal have been published since the 2012 Listing Rule. NMFS could not have previously considered these data because they did not exist at the time of the listing determination. Under the correct standard, which imposes a "non-stringent" standard for a positive "may be warranted" finding, NMFS should have issued a positive finding because new data and analyses, published after 2012, were

---

[7] Guidance on Responding to Petitions and Conducting Status Reviews under the Endangered Species Act (updated Feb. 1, 2021) at 4-6 & nn.2-4, *available at* https://media.fisheries.noa.gov.

presented in the Petition. Indeed, under the correct standard, a reasonable person would find that the new data were substantial, indicating that a new status review is warranted.

45.     Moreover, even if NMFS found that the information presented conflicted with its own data or conclusions, in that circumstance the agency "must credit the supporting evidence unless that evidence is unreliable, irrelevant, or otherwise unreasonable to credit." *Buffalo Field Campaign*, 2018 WL 646887, at *5. But NMFS provided no evidence that the information provided in the Petition is unreliable or inaccurate; nor should it at the 90-day review phase, given the relaxed standard for a positive finding.

46.     Instead of responding with a positive 90-day finding triggering a 12-month review, NMFS announced that it will conduct a "5-year review" of the ringed seal's listing status. *See* Initiation of a 5-Year Review for the Arctic, Okhotsk, Baltic, and Lagoda Subspecies of the Ringed Seal, 85 Fed. Reg. 76017 (Nov. 27, 2020). A 5-year review is conducted under a different provision of the ESA, Section 4(c)(2)(A), which does not impose deadlines for completion of the review in contrast to a 12-month finding on a status review, and does not require a determination as to whether the petitioned action (here, delisting) is warranted.[8]

---

[8] One substantial difference between conducting a 12-month review versus a 5-year review is that, should a listing status change be found to be warranted, a 12-month review would accomplish the appropriate status change with fewer regulatory steps and a shorter timeline, including a specific deadline. *See* U.S. Fish & Wildlife Serv. and Nat'l Marine Fisheries Serv., *5-Year Review Guidance: Procedures for Conducting 5-Year Reviews Under the Endangered Species Act* (July 2006), at 1-2: "[A] 5-year review does not involve rulemaking; the review recommends whether or not to change the species' classification, thus indicating that a rulemaking may be necessary. *A species*

47.     NMFS's initiation of the 5-year review on the status of the Arctic ringed seal is inconsistent with, and thereby undermines the Negative 90-Day Finding.  In its initiation of the 5-year review, NMFS solicits the very type of new information that was provided in Plaintiffs' Petition.  The 5-year status review is therefore an improper effort by NMFS to avoid proceeding with the delisting review process required under ESA Section 4(b) and issuing a 12-month finding based on updated information and analysis concerning the Arctic ringed seal.

48.     For the reasons set forth below, NMFS's Negative 90-Day Finding is arbitrary, capricious and unlawful.

### The Petition presented substantial information indicating that the delisting of the Arctic ringed seal may be warranted, thereby meeting the low threshold for a positive 90-day finding.

49.     The original 2012 Listing Rule for the Arctic ringed seal was flawed because, among other problems, NMFS failed to fully and accurately account for uncertainty in its foreseeability determination.  This led NMFS to erroneously determine that the foreseeable future for ringed seals extended to 2100, when in fact it is not possible to project this species' status nearly so far into the future with any reasonable degree of certainty.

50.     Close to a decade of new data, information, analyses, and climate modeling demonstrate that the 2012 Listing Rule was based on inaccurate assumptions and an

---

*classification cannot be changed until the rulemaking process is complete*" (emphasis in original; footnote omitted), which requires more regulatory steps and takes much longer.

artificially narrow selection of models. Several sources of new data and information demonstrate that NMFS erred in the Listing Rule in projecting the present or threatened destruction, modification, or curtailment of habitat or range of Arctic ringed seals. 16 U.S.C. § 1533(a)(l)(A). These sources include new climate modeling based on the IPCC's Fifth Assessment Report ("AR5") as well as new biological data concerning the Arctic ringed seal population and its response to environmental changes, such as ocean acidification.

*NMFS's selective 2012 modeling overstated threats and inaccurately modeled populations and therefore can no longer serve as the basis underlying the threatened status of the Arctic ringed seal.*

51. Shortly after the 2012 listing of the Arctic ringed seal, the Coupled Model Intercomparison Project Phase 5 ("CMIP5") produced simulations of future climate for the IPCC AR5 that were substantial improvements from the modeling done for the IPCC AR4, which was published in 2007 and was the primary basis for NFMS's climate projections in the Listing Rule. *See* 77 Fed. Reg. at 76,707. The new climate projections in the IPCC AR5 are derived using several different scenarios expressed as Representative Concentration Pathways ("RCPs"). Specifically, the RCPs are greenhouse gas concentration scenarios that are defined by their total radiative forcing level in the year 2100, relative to pre-industrial radiative forcing.

52. RCPs represent possible futures based on economic activity and regulatory frameworks and their influence on greenhouse gas emissions. The four scenarios primarily used in the IPCC AR5 were RCP2.6, RCP4.5, RCP6.0, and RCP8.5, with the number representing the increase in radiative forcing in 2100, not surface temperature.

RCP2.6 represents the development of greener technologies under a more strictly regulated policy environment, whereas RCP8.5 represents the continuation of current growth trends, with little technological development and little regulation. Under AR5, each of these RCPs was considered possible, depending on what technological innovations may occur and the various decisions governments and citizens will make in future decades. These four scenarios were specifically chosen to represent that broad range of potential climate outcomes.

53.     The modeled projections of future sea ice and snow cover conditions from the four primary RCPs used in AR5 reflect a future that is much less certain or "foreseeable" than in the AR4 scenarios used by NMFS in the Arctic ringed seal Listing Rule. Moreover, NMFS used only a limited subset of the IPCC AR4 climate scenarios, making the contrast with the new projections even greater. When the more realistic full set of possible scenarios are used, there is considerable divergence of the projections after mid-century, particularly in high-latitude areas such as the Arctic ringed seals' circumpolar habitat.

54.     The IPCC AR5 climate projections demonstrate that sea ice and snow cover habitat conditions cannot be accurately predicted beyond the middle of this century due to the significant variability in projections among the RCP scenarios—particularly in high-latitude areas such as the Arctic Ocean. The findings of a working group that contributed to the CMIP5 analysis[9] (hereinafter "IPCC 2013") indicate that by mid-

---

[9] See IPCC 2013 at 1006 (Fig. 11.24b).

century (2036-2055), the difference between RCP2.6 and RCP8.5 model projections in the Alaska region ranges from about 1.0 to 1.5°C. But by the late 21st century period (2081-2100), long-term climate projections show much larger variability in projected surface temperature changes. For the Alaska region, the IPCC AR5 projects surface temperature increases with a spread in range from about 2°C (under RCP2.6), to 5 to 7°C (under RCP8.5).

55.     The IPCC AR5 and a recent study[10] suggest that NMFS's conclusions regarding the constant status quo of greenhouse gas emissions are questionable at best. The four RCPs used in IPCC AR5 were four of many possible emission scenarios and represent the range of greenhouse gas emissions considered in the scientific literature at the time of the report.[11] The four RCPs also represent a range of potential climate policies for this century, from strong mitigation measures to a no-climate-policy scenario, because the climate policies that various governments will implement within the next few decades are not known.

56.     The inclusion of climate policy as a factor in future greenhouse gas emissions was an important scientific advancement in the climate modeling by the IPCC in AR5.[12] The best available scientific information acknowledges that the unknown future decisions of governments will affect the trajectory of climate change. These future

---

[10] Ross J. Salawich et al., *Paris Climate Agreement: Beacon of Hope*, *Chap. 1: Earth's Climate System* (J. Dodson, ed., Springer Climate 2017).

[11] *See* IPCC (2013) at 1005-7.

[12] *Id*. at 1007.

decisions are a significant source of uncertainty in the climate system that NMFS must consider in its determination of the foreseeable future.

57.     NMFS must consider the full array of RCPs to understand the range of potential changes to sea ice and snow cover habitat, and can only reasonably rely on the projections derived from those RCP scenarios during the period in which there is no significant divergence between the predicted sea ice, snow cover habitat conditions, and biological responses of Arctic ringed seals.

*New information demonstrates that Arctic ringed seals are not likely to be in danger of extinction due to changes in habitat.*

58.     Research since the 2012 listing indicates that even in areas where significant reductions in sea ice extent and snow depth have occurred, Arctic ringed seal breeding and reproductive processes have not been negatively affected, which is contrary to NMFS predictions. Body condition, growth, pregnancy rates, and proportions of pups in the harvest have not declined.[13] Indeed, even with the prospect of changing sea ice conditions, studies since the 2012 listing have observed that ringed seals are resilient in the face of climate change.

59.     Regarding ocean acidification, a potential secondary concern for Arctic ringed seals noted by NMFS in the 2012 Listing Rule, recent studies indicate that there is considerable uncertainty concerning the effects of ocean acidification in the Arctic Ocean

---

[13] *See generally* Petition at 15-17; *see also* Justin A. Crawford et al., *A comparison of ringed and bearded seal diet, condition and productivity between historical (1975-1984) and recent (2003-2012) periods in the Alaskan Bering and Chukchi seas*, 136 Progress in Oceanography 133 (2015); Chambellant (2012) at 267-281.

and adjacent waterbodies. Most notably, in reaching its conclusion that the Pacific walrus should not be listed under the ESA, NMFS's sister agency, the U.S. Fish and Wildlife Service ("FWS"), addressed the subject of ocean acidification directly.[14]

60.     The FWS's 2017 Species Status Assessment for the Pacific walrus concluded that numerous factors, including spatio-temporal variation, responsive production in phytoplankton photosynthesis, and differences in aragonite saturation, could mitigate the impacts of acidified seawater to a perhaps major degree, notwithstanding differences between walrus and Arctic ringed seal life history characteristics. Moreover, the factors that influence ocean acidification stem from a wide variety of sources, so that it is not possible to reliably predict the impact of ocean acidification on ringed seals across their expansive circumpolar range. Consequently, the best science available provides no firm evidence of the potential threat to Arctic ringed seals due to ocean acidification.

61.     NMFS and FWS have reached opposite conclusions regarding ocean acidification as a key environmental factor. These opposing views by the two federal agencies charged with administering the ESA demonstrate that there is considerable uncertainty surrounding this key factor. NMFS's failure to even acknowledge this uncertainty was improper and resulted in its inaccurate assessment of what effects are foreseeable.

---

[14] *See* James G. McCracken et al., *Species Status Assessment for the Pacific Walrus,* U.S. Fish & Wildlife Serv. 7 (2017).

**It was improper for NMFS to simultaneously issue a negative 90-day finding while initiating a five-year status review.**

62. The Petition presented substantial new scientific information that NMFS did not previously consider and new analyses of data concerning the ringed seal, which raised legitimate questions about the data and analytic methodology used in the 2012 Listing Rule. This new information and analyses instead indicated that the Arctic ringed seal may not meet the statutory definition of a "threatened" species and that delisting may be warranted. This updated and novel information could not have been considered by NMFS at the time of listing because it had not yet been collected and therefore was not available to the agency. Indeed, data on responses of ringed seals to observed habitat loss since the 2012 listing are, by definition, new information. The Petition also cited new analyses of the data considered in the listing determination as well as additional analyses of data collected since listing regarding the responses of ringed seals to observed changes in their sea ice habitat. This new information and additional and alternative analyses were improperly rejected by the agency in its 90-day finding, in violation of ESA Section 4(b)(3).

63. NMFS "nevertheless" initiated a 5-year review of the population status of the Arctic ringed seal, "including whether the best scientific and commercial data available indicate delisting is warranted." But initiating a five-year review while rejecting the Petition does not cure NMFS's violation of ESA Section 4(b)(3)(A), which required the agency to evaluate the information provided in the Petition based on the "reasonable person" standard, *i.e.*, "whether a reasonable person conducting an impartial

scientific review would conclude that the action proposed in the petition may be warranted despite the previous review or finding." 50 CFR 424.14(h)(l)(iii). A "reasonable person" would find that six years of additional data on the species, a revised and updated climate change assessment with expanded emission scenarios, and analyses of information NMFS admits it did not have when the Listing Rule was issued in 2012 all raise considerable doubt about the prior foreseeable future and listing determinations made by NMFS. Given the well-established "non-rigorous" standard for a positive 90-day finding on a petition, a reasonable person conducting an impartial review would conclude that the Petition presented "substantial information indicating that delisting *may* be warranted" (emphasis added).

64. Although the 5-year review NMFS initiated for the ringed seal may evaluate much of the same newly available information as the 12-month review that would have been triggered by a positive 90-day finding, the 5-year review will require a separate rulemaking process to actually implement any decision to delist the ringed seal. The 12-month review, in contrast, would require fewer steps and be completed more quickly. In addition, a five-year review and a 12-month review serve different purposes: a 5-year review focuses on providing updated information on an already-listed species, whereas a 12-month review requires a more comprehensive evaluation of whether the initial listing decision for a species was in error. Moreover, unlike a status review under ESA Section 4(b)(3), there is no enforceable deadline for completing a 5-year review, nor are there detailed procedures governing such reviews. *See* 16 U.S.C. § 1533(c)(2);

50 C.F.R. § 424.21. As a consequence, NMFS's initiation of a 5-year review was an improper attempt to excuse its erroneous Negative 90-Day Finding.

## CLAIM FOR RELIEF

### Defendant's Negative 90-Day Finding on the Petition to Delist the Arctic Ringed Seal Was Arbitrary, Capricious, and Unlawful

65.     Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint.

66.     For the reasons alleged hereinabove, in the Negative 90-Day Finding, NMFS (1) improperly rejected the substantial new information and analysis concerning ringed seals that were submitted by Plaintiffs, which violated the ESA and NMFS's implementing regulations; (2) erroneously relied on outdated information, rather than the new information submitted in the Petition, which violates the ESA and NMFS's implementing regulations and petition review policy; and (3) applied erroneous legal standards to its review of the Petition. Therefore, the Negative 90-Day Finding is arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in excess of statutory authority, and without observance of the procedure required by law, in violation of the ESA and the APA. *See* 16 U.S.C. § 1533(b); 5 U.S.C. § 706(2).

67.     To the extent NMFS has failed to act by improperly initiating a 5-year review rather than a full 12-month review in accordance with ESA Section 4(b)(3), the 12-month review is action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). These errors prevented NMFS from properly considering whether the Arctic

ringed seal meets the definition of a threatened species, including correcting the agency's inappropriate and flawed approach for determining the foreseeable future.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court enter judgement in favor of Plaintiffs granting the following relief:

A.     Declare that Defendant violated the ESA and the APA by issuing the Negative 90-Day Finding on the Plaintiffs' Petition to delist the Arctic ringed seal;

B.     Hold unlawful and set aside the Negative 90-Day Finding;

C.     Direct that the NMFS issue a positive 90-day finding on the Plaintiffs' Petition to delist the Arctic ringed seal and proceed to complete a legitimate review of the species' status in accordance with the requirements of the ESA;

D.     Award Plaintiffs their costs of court, including reasonable attorney fees pursuant to the ESA, 16 U.S.C. § 1540(g)(4), or, in the alternative, the Equal Access to Justice Act, 28 U.S.C. § 2412; and

E.     Provide Plaintiffs such other and further relief as the Court deems just and proper.

DATED November 15, 2022.

///

///

///

///

///

*State of Alaska v. National Marine Fisheries Service*
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page 26 of 27

FENNEMORE CRAIG P.C.

By:     /s/ Norman D. James
Norman D. James (AZ Bar No. 006901)
Bradley J. Pew (AZ Bar No. 033876)
Tyler D. Carlton (AZ Bar No.035275)
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5000
Facsimile: (602) 916-5546
Email:  njames@fennemorelaw.com
        bpew@fennemorelaw.com
        tcarlton@fennemorelaw.com
(*pro hac vice applications forthcoming*)

TREG R. TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl
(Alaska Bar No. 2108081)
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone:  (907) 269-5232
Facsimile:  (907) 276-3697
Email: ron.opsahl@alaska.gov

Attorneys for Plaintiffs

28217551.3