TREG R. TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov

FENNEMORE CRAIG P.C.
Norman D. James (AZ Bar No. 006901)
Bradley J. Pew (AZ Bar No. 033876)
Tyler D. Carlton (AZ Bar No.035275)
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5000
Facsimile: (602) 916-5546
Email:  njames@fennemorelaw.com
	bpew@fennemorelaw.com
	tcarlton@fennemorelaw.com
(*admitted pro hac vice*)

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| State of Alaska; and North Slope Borough, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 3:22-cv-00249-JMK<br>)<br>) |
| v. | )<br>) |
| National Marine Fisheries Service, | )<br>) |
| Defendant. | )<br>) |

# PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE
# OF CENTER FOR BIOLOGICAL DIVERSITY

The Center for Biological Diversity ("Center") has moved to intervene under Federal Rule of Civil Procedure 24 as a defendant in this action to defend the agency decision challenged by Plaintiffs State of Alaska and North Slope Borough (collectively, "Plaintiffs"). Specifically, Defendant National Marine Fisheries Service ("NMFS") issued a negative 90-day finding in response to Plaintiffs' petition for delisting of the ringed seal pursuant to the Endangered Species Act. The Center asserts it is entitled to intervene because it has an interest in the ringed seal listing, but Plaintiffs' claims cannot result in delisting. Further, because the government is defending NMFS's action based upon a limited administrative record, the Center's involvement will only unnecessarily complicate the straightforward legal issues in this litigation. In sum, the Center lacks any interest in this case and leave to intervene is not warranted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 29, 2019, Plaintiffs (along with others) filed a petition ("Delisting Petition") with NMFS to delist the Arctic subspecies of the ringed seal ("ringed seal") pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(b)(3)(A). Doc. 1 ¶ 42. NMFS listed the ringed seal under the ESA about seven years earlier on December 28, 2012. *See Threatened Status for the Arctic, Okhotsk, and Baltic Subspecies of the Ringed Seal*, 77 Fed. Reg. 76,706 (Dec. 28, 2012) ("Listing Rule"). Doc. 1 ¶ 23. The Delisting Petition "presented post-listing climate projections and related data, as well as substantial post-listing data on Arctic ringed seal biology, which conflicted with the 2012

1

'threatened' determination and indicated that NMFS erred in the confidence the agency placed in its long-term projections of climate change." Doc. 1 ¶ 42.

The ESA gives interested persons the right to submit a written petition to NMFS to remove a species from the lists of endangered and threatened species or to change the listed status of a species. 16 U.S.C. § 1533(b)(3); 50 C.F.R. § 424.14. Within 90 days of receipt of a petition seeking to change a species' ESA listing status, NMFS must, "to the maximum extent practicable," make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action *may be* warranted." 16 U.S.C. § 1533(b)(3)(A) (emphasis added). This 90-day finding is limited "to the information contained in the petition or the [agency's] files." *Buffalo Field Campaign v. Zinke*, 289 F. Supp. 3d 103, 106 (D.D.C. 2018); *see* 16 U.S.C. § 1533(b)(3)(A) (stating the agency "shall make a finding as to whether the *petition presents substantial scientific or commercial information* indicating that the petitioned action may be warranted" (emphasis added)).

If NMFS determines in a 90-day finding that the petitioned action is not warranted, i.e., a "negative" finding, then the process ends. *See* 16 U.S.C. § 1533(b)(3)(A)–(B). If, however, NMFS concludes in a 90-day finding that there is substantial information indicating that the petitioned action "may be warranted," i.e., a "positive" finding, the process continues to a more rigorous 12-month review that includes public comment. *See id.*; *see also Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711, 718 (W.D. Tex. 2019) (describing delisting process); *Buffalo Field Campaign*, 289 F. Supp. 3d at 106 (same). NMFS must then decide whether

the petitioned act is (1) not warranted, (2) warranted, or (3) warranted but precluded by other priorities. 16 U.SC. § 1533(b)(3)(B); *Stewards of Liberty*, 370 F. Supp. 3d at 718. Thus, if NMFS decides delisting may be warranted after the 90-day review, then delisting can only occur after the 12-month review and public comment. *See* 16 U.S.C. § 1533(b)(3)(B); *Stewards of Liberty*, 370 F. Supp. 3d at 718; *Buffalo Field Campaign*, 289 F. Supp. 3d at 106.

Here, NMFS made a negative 90-day finding on the Delisting Petition on November 27, 2020. *See 90-Day Finding on a Petition to Delist the Arctic Subspecies of Ringed Seal*, 85 Fed. Reg. 76,018 (Nov. 27, 2020) ("Negative 90-Day Finding"). Plaintiffs now challenge that Negative 90-Day Finding and ask the Court to vacate the finding and remand it with instructions to issue a positive 90-day finding on the Delisting Petition and to proceed to the 12-month review.

On January 23, 2023, the Center for Biological Diversity ("Center") sought leave to intervene in defense of NMFS's decision. Doc. 10. The Center asserts that it is entitled to intervention as of right and that permissive intervention is available under Federal Rule of Civil Procedure 24. Doc. 10. The government has since filed an answer on behalf of NMFS and is defending the Negative 90-Day Finding. Doc. 18.

In its Motion, the Center describes a single interest entitling it to intervene in defense of NMFS's rule: the ringed seal's listing, which occurred in 2012, seven years before NMFS's decision here. Doc. 10 at 2, 10. However, Plaintiffs' complaint here cannot result in delisting. Instead, Plaintiffs ask that the Court set aside NMFS's Negative 90-Day Finding, and remand with instructions to issue a positive 90-day finding and

3

complete a 12-month review in accordance with the ESA. Doc. 1 at 26. Ultimately, Plaintiffs' complaint is limited to a challenge to NMFS's Negative 90-Day Finding, and delisting of the ringed seal is not an available form of relief even if Plaintiffs prevail.

## II. LEGAL STANDARD

Under Rule 24, a non-party can intervene in an action in two ways: as of right or permissively. *See* Fed. R. Civ. P. 24(a)–(b).

Rule 24(a) governs entitlement to intervention as of right. Specifically, it provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

*Id.* 24(a). Thus,

> [a]n applicant seeking intervention as of right must show that: (1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). "Failure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). And it is the intervenor's burden to establish all four elements. *See Donnelly*, 159 F.3d at 409.

Rule 24(b) provides for permissive intervention. It states: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the

main action a common question of law or fact." Fed. R. Civ. P. 24(b). Again, it is the intervenor's burden to show the Court should allow it to intervene. *See Donnelly*, 159 F.3d at 412.

## III. ARGUMENT

The Center has not established that it has a right to intervene or that permissive intervention is available to it. Thus, the Center's Motion should be denied.

### A. The Center is not entitled to intervention as of right.

Plaintiffs concede that the motion to intervene is timely, however, the Center cannot meet the other three elements, thereby precluding entitlement to intervention as of right. First, this litigation cannot directly affect the Center's single identified interest in the ringed seal listing, so the Center lacks a significant protectable interest. Second, and in a similar vein, this litigation cannot impair the Center's ability to protect its interest in the ringed seal listing because there are alternative forums for it to advance that interest, including through public comment and by litigation if NMFS ultimately decides to delist. Finally, the government and the Center have the same objective—defense of NMFS's Negative-90 Day Finding, and the Center has not overcome the presumption that the government will adequately represent the Center's interest in the ringed seal listing. Accordingly, the Center is not entitled to intervention as of right.

#### 1. The Center lacks a significant protectable interest because this litigation cannot result in delisting, and thus, it cannot directly affect the Center's interest in the ringed seal listing.

The Center's sole interest in the ringed seal listing is not a "significant protectable interest" that provides a ground to intervene because there is no relationship between this

5

interest and Plaintiffs' claims. "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly*, 159 F.3d at 409. "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Id.* "The plaintiff's requested remedy must have a direct, immediate, and harmful effect on the third party's legally protectable interest." *Id.* at 411 (cleaned up); *see also Warren v. Comm'r of Internal Revenue*, 302 F.3d 1012, 1015 (9th Cir. 2002) (rejecting intervenor when applicant was "not directly affected by the subject matter of this litigation").

Here, even assuming that the Center's interest in the ringed seal listing is protected under law, resolution of Plaintiffs' claim that NMFS erred in issuing the Negative 90-day Finding cannot, on its own, result in the delisting of the ringed seal. To start, only the requested remedies are relevant. *Donnelly*, 159 F.3d at 410–11 (describing that waived remedies were not relevant to reviewing whether intervenors had a significant protectable interest). None of Plaintiffs' requested remedies seek delisting of the ringed seal. *See* Doc. 1 at 26. Thus, Plaintiffs' requested remedies cannot have a "direct, immediate, and harmful effect" on the Center's interest in the ringed seal, which is alone fatal to the Center's request for intervention as of right. *See Donnelly*, 159 F.3d at 411.

Further, delisting is not possible from this litigation challenging the Negative 90-Day Finding even if Plaintiffs asked for it. Instead, the 90-day finding is a preliminary step in the process of delisting, and it only means that delisting "may be warranted" if NMFS makes a positive finding on the Delisting Petition. *See* 16 U.S.C. § 1533(b)(3);

*Stewards of Liberty*, 370 F. Supp. 3d at 718; *Buffalo Field Campaign*, 289 F. Supp. 3d at 106. Even if Plaintiffs prevail on their claims, NMFS could still reject the delisting of the ringed seal after public comment and a 12-month review. *See* 16 U.S.C. § 1533(b)(3); *Buffalo Field Campaign*, 289 F. Supp. 3d at 106. Consequently, resolution of Plaintiffs' claims will not "actually . . . affect the [Center's]" interest in the ringed seal listing because delisting cannot occur as a result of any of Plaintiffs' claims in this action. *Donnelly*, 159 F.3d at 409–10 (stating there was no right to intervene where resolution of plaintiffs' claims would "not affect the proposed intervenors' claims"); *Warren*, 302 F.3d at 1015. Thus, Plaintiffs' claims cannot "have a direct, immediate, and harmful effect on" the Center's sole identified interest in the ringed seal listing and there is no right to intervene. *Donnelly*, 159 F.3d at 411 (cleaned up).

> **2.  This litigation cannot impair the Center's interest in the ringed seal listing because there are alternative forums in which the Center can advance that interest regardless of the result in this litigation.**

The Center also cannot show that resolution of this action will impair its interest in the ringed seal's listing because it can protect this interest in a variety of forums even if Plaintiffs prevail on their claims and obtain a positive 90-day finding. There is no impairment of a party's interest if there are "other means by which [the applicant] may protect its interests." *See United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (rejecting intervention in case where proposed intervenor had other means to protect its interests); *Warren*, 302 F.3d at 1015 ("Because [the proposed intervenor] may raise this issue through a separate lawsuit, our denial of intervention will not impair his

7

ability to protect his interest as a taxpayer."). For example, in *Friends of the Wild Swan, Inc. v. U.S. Fish & Wildlife Service*, the court rejected intervention as of right in a case regarding the listing of the bull trout because the court could only remand for further determination of the propriety of the listing and the intervenor could advance its interests related to the listing in other forums, including public comment on the listing decision. 896 F. Supp. 1025, 1028 (D. Or. 1995).

The same is true here. The Court cannot order delisting, and Plaintiffs have not sought that remedy. Doc. 1 at 26; 16 U.S.C. § 1533(b)(3); *Stewards of Liberty*, 370 F. Supp. 3d at 718; *Buffalo Field Campaign*, 289 F. Supp. 3d at 106. The most that can occur here is an order directing NMFS to issue a positive 90-day finding, which will then result in remand and further analysis by NMFS, just as in *Friends of the Wild Swan*. *See also Buffalo Field Campaign*, 289 F. Supp. 3d at 111–12 (describing available relief where there was error in negative 90-day finding). And like all the forums that were available to the proposed intervenors in *Friends of the Wild Swan*, the Center likewise has forums to advance its interests in the listing of the ringed seal, including through public comment assuming a positive 90-day finding, as discussed, or even through subsequent litigation if NMFS ultimately delists the ringed seal after going through the multi-step analytical process and public comment. *See* 896 F. Supp. at 1028.[1] Accordingly, because the Center has these alternative means to advance its interest, a

---

[1] A delisting decision may be challenged in federal court. *See, e.g.*, *Defs. of Wildlife v. Salazar*, No. CV 12-1833 (ABJ), 2013 WL 12316816, at *1 (D.D.C. May 3, 2013) (recounting party's challenge to delisting decision).

8

decision in Plaintiffs' favor on its claims will not impair the Center's sole identified interest in the ringed seal listing. *See Alisal Water Corp.*, 370 F.3d at 921; *Warren*, 302 F.3d at 1015. The Center cannot intervene as of right.

### 3. The government is defending NMFS's decision and adequately represents the Center's interest in the ringed seal listing.

Finally, the Center has not overcome the presumption that the government will adequately represent its interest in the ringed seal listing. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Here, both the government and the Center seek the same "ultimate objective"—the upholding of NMFS's Negative 90-Day Finding on the ringed seal listing, meaning that delisting cannot proceed. The Center asserts that NMFS did not err in issuing the Negative 90-Day and it asks that the Court deny Plaintiffs' requested relief of vacating the Negative 90-Day Finding. The government's answer likewise denies that NMFS erred in issuing the Negative 90-Day Finding and that Plaintiffs are not entitled to the requested relief. *Compare* Doc. 1 ¶ 6, *with* Doc. 18 ¶ 6; *Compare* Doc. 1 at 26, *with* Doc. 18 at 14. Even the Center concedes that it shares the same ultimate objective with NMFS: "upholding its rejection of [Plaintiffs'] petition to delist the ringed seal." Doc. 10-1 at 18. Thus, there is a presumption that the government adequately represents the Center's interest in the ringed seal listing.

The Center has not overcome this presumption. While the Center asserts that NMFS "will likely be balancing various interests" as opposed to the Center, which will

9

be "focused on the conservation of the ringed seal," these types of "differences in litigation strategy do not normally justify intervention." *Arakaki*, 324 F.3d at 1086. In any event, the only question at this stage is whether is whether the government is "capable and willing to make th[e] arguments" the Center will make in support of NMFS's decision. *Id.* at 1086–87. The Center has cited nothing that suggests that the government will not advance whatever arguments are necessary to upholding NMFS's Negative 90-Day Finding. *See* Doc. 10-1 at 16–20. And any past differences between the government and the Center on the listing of the ringed seal does not overcome the presumption of adequacy because nothing indicates there is a current conflict that would prevent the government from making any argument necessary to support NMFS's decision here. *See Arakaki*, 324 F.3d at 1086–87. Thus, the Center has not shown that the government will not adequately represent its interest in the listing of the ringed seal.

Moreover, NMFS's 90-day review "is confined to the information contained in the petition or [NMFS's] files." *Buffalo Field Campaign*, 289 F. Supp. 3d at 106; *see also* § 1533(b)(3)(A) (stating agency "shall make a finding as <u>to whether the petition presents substantial scientific or commercial information</u> indicating that the petitioned action may be warranted" (emphasis added)). Because NMFS's 90-day review is so narrow, the universe of data is limited and there is little that the Center can add to what the government will say in defense of NMFS's decision.

The Center's reference to past litigation regarding NMFS's decision to list the ringed seal is irrelevant to its right to intervene here. Doc. 10-1 at 19–20. This case is unrelated to NMFS's decision to list the ringed seal, which was issued in December 2012,

10

years before the challenged 90-Day Negative Finding, which was issued on November 27, 2020. Doc. 1 ¶¶ 3, 23, 43. Thus, while "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported," *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995), the Center had no involvement in the Negative 90-Day Finding and the original listing decision is not challenged in this case. Consequently, *Idaho Farm Bureau* does not support intervention here because in that case, the point was that the past litigation challenged a measure the intervenor supported, unlike here, where the Center had nothing to do with the challenged Negative 90-Day Finding. *See id.*

*Fresno County v. Andrus* is unhelpful to the Center as well. 622 F.2d 436, 438 (9th Cir. 1980). There, the court reasoned that the government could not adequately represent the intervenor in litigation seeking to "suspend rulemaking proceedings" because the agency "began [that] rulemaking only reluctantly after [the intervenor] brought a lawsuit against it." *Id.* at 437–39. Again, like in *Idaho Farm Bureau*, the intervenor supported the agency action that was challenged in the litigation. *Fresno County* is therefore inapposite because the Center did not (and could not) take any action to support the Negative 90-Day Finding. Also, in *Fresno County*, the government did not take an appeal against the preliminary injunction suspending the rulemaking proceedings that the intervenor supported, reinforcing that the government did "not represent [intervenor] fully." *Id.* at 439. Dissimilarly here, the government is supporting the agency action, further distinguishing *Fresno County*.

11

Finally, *Coalition of Arizona/New Mexico for Stable Economic Growth v. Department of Interior* is distinguishable for the same reason. 100 F.3d 837, 838 (10th Cir. 1996). There, the plaintiff challenged the decision to list the species, and the intervenor based his right of intervention on the fact that "he was instrumental in FWS's initial decision to protect the Owl under the Act." *Id.* at 838–39, 844–46. But here, Plaintiffs are not challenging the 2012 *listing* decision that the Center claims it was instrumental in, but instead, they are challenging a separate decision to issue a Negative 90-Day Finding in response to the Delisting Petition.

In sum, the Center mischaracterizes the point of *Idaho Farm Bureau*, *Fresno County*, and *Coalition*. Doc. 10-1 at 19–20. Those cases indicate that an intervenor may not be adequately represented by the government if that intervenor supported the action that is being challenged in the litigation and the government was reluctant to take that action without the intervenor's insistence. Here, the Center had nothing to do with the challenged Negative 90-Day Finding, rendering all three cases inapposite.

At bottom, the Center and the government have the same ultimate objective—upholding the Negative 90-Day Finding—and the Center has not overcome the presumption that the government will adequately represent the Center's interest in the listing of the ringed seals. The Center has identified no argument that it will raise that the government will not raise in support of the Negative 90-Day Finding. Accordingly, the Center cannot intervene.

Consequently, the Center has not met its burden of establishing a right to intervene under Rule 24(a). First, the Center does not have a significant protectable interest because

12

delisting of the ringed seal cannot occur as a direct result of this litigation, so the Center's sole interest in the listing of the ringed seal has no relationship to this litigation. Second, the Center can assert its interest in the ringed seal listing in other forums, including through public comment and litigation if NMFS decides to delist. Finally, the Center has not overcome the presumption that the government can adequately represent its interest here. Any of these three reasons precludes intervention as of right.

Ultimately, this case involves straightforward legal issues related to a particular and narrow agency process, and the Center has nothing relevant to add. Injecting public policy issues related to environmental concerns generally and the ringed seals specifically will not be relevant to the narrow legal issues in dispute here. The public policy issues that the Center cites throughout its brief are built on "what it believes the public policy respecting [the ringed seals and other environmental concerns] ought to be," which are "concerns [that] should be addressed to the Executive or Legislative branches." *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983). And even if the Center's public policy concerns are relevant to this litigation, they should be raised through an amicus curiae brief, not intervention. *See Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993). If the Center wants to advance its public policy concerns, it can seek leave to proceed as an amicus curiae.

### B. Permissive intervention is also unavailable to the Center.

The Center is not eligible for permissive intervention either. The Center has cited no federal statute that gives it "a conditional right to intervene." Fed. R. Civ. P. 24(b)(1)(A). Thus, the Center is only eligible for permissive intervention if it "has a claim

13

or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

Here, the Center lacks <u>any</u> claim or defense, precluding eligibility for permissive intervention. *See id.* The Supreme Court has explained that the term "claim or defense" as used in Rule 23 and Rule 24 "manifestly refer[s] to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997). Thus, courts have routinely and correctly rejected permissive intervention when the proposed intervenor has asserted no cognizable claim or defense. *Org. for Competitive Markets, Inc. v. Seaboard Farms, Inc.*, No. 00-3432, 2001 WL 842029, at *2 (8th Cir. Feb. 1, 2001) (per curiam); *Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*, No. 2:16-CV-02525-MMD-NJK, 2021 WL 1722896, at *5 (D. Nev. Apr. 30, 2021); *N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313, 1335 (Ct. Int'l Trade 2021); *DeOtte v. Azar*, 332 F.R.D. 173, 186 (N.D. Tex. 2019); *Donahoe v. Arpaio*, No. CV10-2756-PHX-NVW, 2012 WL 2675237, at *3 (D. Ariz. July 6, 2012).

Here, the Center has identified no claims on which it can sue or be sued that have any relationship to this litigation. The Center cannot assert any defense to Plaintiffs' claims because Plaintiffs have no claim against the Center that share any questions of law and fact with Plaintiffs' claims challenging NMFS's 90-Day Negative Finding. *See N. Am. Interpipe, Inc.*, 519 F. Supp. 3d at 1335. Accordingly, the Center is not eligible for permissive intervention.

14

*Kootenai Tribe of Idaho v. Veneman* does not support allowing permissive intervention here. 313 F.3d 1094 (9th Cir. 2002). There, environmental groups sought permissive intervention to defend a regulation—the "Roadless Rule"—that protected certain areas from development. *Id.* at 1109–10. The environmental groups asserted that they had an interest in defending the Roadless Rule from claims brought by multiple plaintiffs because the environmental groups engaged in outdoor recreation in these areas and that invalidation of the Roadless Rule based on the plaintiffs' claims would remove the protections. *See id.* at 1104, 1109–10. Further, the government refused to defend the Roadless Rule. *Id.* at 1111. The court explained that the environmental groups were eligible for permissive intervention based on "a common question of law or fact" because they "asserted interests related to the Roadless Rule . . . and asserted defenses of the Roadless Rule directly responsive to the claims for injunction asserted by plaintiffs," and the court recognized that resolution of the case "impacted large and varied interests." *Id.*

In stark contrast, here, the Center's interest in the ringed seal listing is not in jeopardy from Plaintiffs' claims nor are there any other "large and varied interests" at risk because this litigation cannot result in delisting, as discussed above. Even a positive 90-day finding is only a preliminary procedural step that will not have any direct effect on the ringed seal listing. Thus, unlike in *Kootenai Tribe*, where a successful challenge to the Roadless Rule would result in invalidation and directly affect the intervenor's interests in the protected areas, here, a favorable decision for Plaintiffs will have no effect on the Center's asserted interest in the ringed seal listing. Thus, the Center has no interest in this case and asserts no defense that presents any common question of law and fact

15

with this litigation, unlike the intervenors in *Kootenai Tribe*. If the Center is correct that it is eligible for permissive intervention solely because it can assert a defense on behalf of NMFS's decision without any risk of any direct effect on the Center from this litigation, Doc. 10-1 at 20–21, anyone can intervene in any action on behalf of a defendant, an absurd result that deprives Rule 24(b)(1)(B)'s language of any meaning.[2]

Permissive intervention is also unwarranted here because the Center's interest in the ringed seal listing is adequately represented by the government. *Perry*, 587 F.3d at 955 (affirming denial of permissive intervention when parties in litigation would adequately represent proposed intervenor's interests); *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (denying permissive intervention where the government would adequately represent intervenors' interests). As discussed above, the government is defending NMFS's Negative 90-Day Finding, and the Center has not established that the government will forego any arguments that the Center could make in defense of NMFS's decision. Because the government will adequately represent NMFS's decision, denial of the Center's request for permissive intervention is appropriate. *Perry*, 587 F.3d at 955; *Richards*, 4 F.3d at 756.

---

[2] *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017) (stating courts "employ the 'traditional tools of statutory construction' to interpret the Federal Rules of Civil Procedure"); *United States v. Webster*, 108 F.3d 1156, 1158 (9th Cir. 1997) (rejecting reading that "would create undesirable results" and noting courts prefer interpretations that "avoid[] absurd results"); *Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388, 394 (9th Cir.1998) ("In interpreting a statutory provision, we must avoid any construction that renders some of its language superfluous.").

In fact, NMFS's 90-day review "is confined to the information contained in the petition or [NMFS's] files." *Buffalo Field Campaign*, 289 F. Supp. 3d at 106; *see also* 16 U.S.C. § 1533(b)(3)(A) (stating agency "shall make a finding as <u>to whether the petition presents substantial scientific or commercial information</u> indicating that the petitioned action may be warranted" (emphasis added)). Ultimately, given that NMFS's 90-day review is so limited, there is little that the Center can add to what the government will say in defense of NMFS's decision.

Finally, "Rule 24(b)(3) also requires that the court 'consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Perry*, 587 F.3d at 955 (quoting Fed. R. Civ. P. 24(b)(3)). In *Perry*, for example, the court recognized the potential for unnecessary delay "given that the parties were 'capable of developing a complete factual record encompassing [the proposed intervenor's] interests" and that "the participation of [intervenor] . . . in all probability would consume additional time and resources of both the Court and the parties that have a direct stake in the outcome of these proceedings." *Id.* at 955–56. The Ninth Circuit affirmed the district court's denial of permissive intervention because "the delay occasioned by intervention outweighed the value added by the [intervenor]'s participation in the suit." *Id.* at 956.

Likewise, here, the Center and the government both have the same objective in defending NMFS's decision. Allowing the Center to advance that same interest will only complicate these proceedings—which solely involve narrow legal issues and a limited record based on the Delisting Petition and NMFS's files. *Buffalo Field Campaign*, 289 F.

17

Supp. 3d at 106. The Center's involvement does not present any identifiable benefit to the Court or the parties, resulting in unjustified delay and unnecessary consumption of "resources of both the Court and the parties that have a direct stake in the outcome of these proceedings." *Perry*, 587 F.3d at 955–56. Again, the Center can effectively assert the public policy concerns it has as an amicus curiae.

The Center is not eligible for permissive intervention under Rule 24(b)(1)(B) because the Center has no claims or defenses and this litigation will have no direct effect on its interest in the ringed seal listing. In addition, the government is defending NMFS's decision, and thus, the government adequately represents the Center's interest here such that permissive intervention is unwarranted. Allowing the Center to intervene will only risk unnecessarily complicating and delaying this litigation. Accordingly, the Court should deny the Center's request for permissive intervention.

## IV. CONCLUSION

The Center has not shown intervention here is proper. The Center has asserted a sole interest in the ringed seal listing, but this litigation cannot have a direct effect on the ringed seal listing. And the Center has identified nothing suggesting that the government will not assert any defense in support of NMFS's decision. Thus, the Center is not entitled to intervention as of right and is not eligible for permissive intervention. The Center's Motion to Intervene fails.

///

///

///

DATED this 6th day of February, 2023.

/s/ *Norman D. James*

TREG R. TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl
(Alaska Bar No. 2108081)
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov

Attorneys for Plaintiffs
FENNEMORE CRAIG P.C.
Norman D. James (AZ Bar No. 006901)
Bradley J. Pew (AZ Bar No. 033876)
Tyler D. Carlton (AZ Bar No.035275)
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5000
Facsimile: (602) 916-5546
Email: njames@fennemorelaw.com
bpew@fennemorelaw.com
tcarlton@fennemorelaw.com
(*admitted pro hac vice*)

28733907.1

19

Case 3:22-cv-00249-JMK   Document 19   Filed 02/06/23   Page 20 of 20