IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA; NORTH SLOPE BOROUGH, | |
| Plaintiffs, | Case No. 3:22-cv-00249-JMK |
| vs. | |
| NATIONAL MARINE FISHERIES SERVICE, | **ORDER GRANTING MOTION TO INTERVENE** |
| Defendant. | |
| and | |
| CENTER FOR BIOLOGICAL DIVERSITY, | |
| Defendant Intervenor. | |

Pending before the Court at Docket 10 is a motion to intervene filed by the Center for Biological Diversity (the "Center"). Plaintiffs State of Alaska and North Slope Borough opposed the motion at Docket 19. The Center replied at Docket 20. For the following reasons, the Center's motion is GRANTED.

## I. BACKGROUND

On December 28, 2012, the National Marine Fisheries Service ("NMFS"), an agency within the National Oceanic and Atmospheric Administration of the Department

of Commerce, listed the Arctic subspecies of ringed seal as "threatened" under the Endangered Species Act (the "ESA").[1] On March 26, 2019, Plaintiffs and others petitioned NMFS to delist the Arctic ringed seal under the ESA (*i.e.*, remove the Arctic ringed seal's "threatened" designation and corresponding protections accorded to it).[2] On November 27, 2020, NMFS rejected the petition through issuance of a "negative 90-day finding" pursuant to the ESA.[3] On November 16, 2022, Plaintiffs filed an action pursuant to the ESA and Administrative Procedure Act (the "APA") to challenge the 90-day Finding.[4] Plaintiffs seek a declaration that NMFS violated the ESA and APA, vacatur of the 90-day Finding, and remand to NMFS with instructions to issue a positive 90-day Finding on Plaintiffs'

---

[1] Docket 1 at 11 ¶ 33; Threatened Status for the Arctic, Okhotsk, and Baltic Subspecies of the Ringed Seal and Endangered Status for the Ladoga Subspecies of the Ringed Seal, 77 Fed. Reg. 76706 (Dec. 28, 2012) (codified at 50 C.F.R. pts. 223, 224). For the purposes of this motion, the Court accepts as true the factual allegations in Plaintiffs' complaint at Docket 1 and the parties' briefing at Docket 10, Docket 19, and Docket 20. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity, or other objections."). The Court also takes judicial notice of the parties' references to documents located in the *Federal Register*. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number."); *United States v. Woods*, 335 F.3d 993, 1001 (9th Cir. 2003) ("Far from abusing its discretion, the district court complied with federal law by judicially noticing the rule." (citing 44 U.S.C. § 1507)); *Ctr. for Biological Diversity v. Wolf*, 447 F. Supp. 3d 965, 978 (D. Ariz. 2020) (taking judicial notice of final rules located in the *Federal Register*).

[2] Docket 1 at 14 ¶ 42.

[3] *Id.* at 15 ¶ 43; 90-Day Finding on a Petition to Delist the Arctic Subspecies of Ringed Seal Under the Endangered Species Act, 85 Fed. Reg. 76018, 76027 (Nov. 27, 2020) [hereinafter 90-day Finding]. In the 90-day Finding, NMFS noted that it separately initiated a review of the status of the Arctic ringed seal under the ESA, but this review is not at issue here. 90-day Finding at 76027.

[4] *See generally* Docket 1.

petition and "proceed to complete a legitimate review of the species' status in accordance with the requirements of the ESA."[5]

The Center seeks to intervene in this action as a defendant either as a matter of right or permissively under Rule 24 of the Federal Rules of Civil Procedure.[6] The Center contends it has a "significantly protectable" interest in the Arctic ringed seal's ESA listing; disposition of this matter will impair the Center's ability to protect its interests; and none of the parties currently involved in the litigation will adequately represent the Center's interests.[7] The Center claims it "has a longstanding interest in the conservation of the ringed seal, wrote the petition that led to the eventual listing of the ringed seal, and has previously intervened in litigation regarding the listing of the species to protect its interests in the seal."[8]

## II.   DISCUSSION

The Court begins by addressing whether the Center is entitled to intervention as of right and then, if necessary, will evaluate whether the Center is entitled to permissive intervention.

## A.    Intervention as of Right

The Ninth Circuit Court of Appeals requires an applicant for intervention as of right under Rule 24(a)(2) to demonstrate that

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the

---

[5] *Id.* at 26.
[6] Docket 10.
[7] Docket 10-1 at 2 (citing Fed. R. Civ. P. 24(a)(2)).
[8] *Id.*

disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.[9]

Although "failure to satisfy any one of the requirements is fatal to the application," courts broadly interpret these requirements in favor of intervention.[10] Courts should let "practical considerations, not technical distinctions," guide their liberal application of Rule 24(a)(2).[11] The parties agree that the Center's motion is timely but dispute whether the Center satisfies the remaining three factors required for intervention as of right.[12] The Court addresses each disputed factor in turn.

### 1. Significant protectable interest

The Center asserts significant protectable interests in the protection of the Arctic ringed seal under the ESA by virtue of its prior efforts to "(1) obtain the ESA listing, (2) defend that listing when challenged by Plaintiffs, and (3) secure critical habitat protections for the ringed seal."[13] The Center cites its extensive advocacy efforts over the last 15 years to protect the Arctic ringed seal, including the original petition the Center filed to list the Arctic ringed seal in 2008, the two lawsuits it filed to compel NMFS to list the species, the comments it filed during "every stage of the process," its intervention to

---

[9] *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

[10] *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (citation omitted); *see also Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) ("[A]n applicant seeking to intervene has the burden to show that these four elements are met . . . ." (citing *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)).

[11] *Citizens for Balanced Use*, 647 F.2d at 897 (quoting *Berg*, 268 F.3d at 818).

[12] *See* Docket 19 at 6 ("Plaintiffs concede that the motion to intervene is timely . . . .").

[13] Docket 10-1 at 10.

defend NMFS's listing decision after Plaintiffs' challenge thereto, and another suit it filed in 2019 to compel NMFS to designate critical habitat for the species.[14] Additionally, the Center describes its members and staff's "longstanding professional and personal interests in the conservation of the ringed seal," as evidenced by their travel to Alaska "to enjoy, study, photograph, and observe the seals."[15]

Focusing on the remedies requested, Plaintiffs argue in opposition that the Center has no protectable interest in this litigation because this suit "cannot, on its own, result in the delisting of the ringed seal."[16] Plaintiffs maintain that, even if they prevail in this suit, NMFS still could choose not to delist the species after a 12-month review pursuant to the ESA.[17] Citing cases in which courts required a proposed intervenor to demonstrate that the plaintiff's requested remedy has "a direct, immediate, and harmful effect" on the proposed intervenor's interest, Plaintiffs further argue that this action can have no such effect on the Center given the extra steps needed before NMFS could revoke the Arctic ringed seal's threatened status.[18]

In this Circuit, a significant protectable interest exists "if the interest is protected by law and there is a relationship between the legally protected interest and the plaintiff's claims."[19] The Court begins by considering whether the Center's interests are

---

[14] *Id.* at 10.

[15] *Id.* at 12.

[16] Docket 19 at 6.

[17] *Id.* at 7 (first citing 16 U.S.C. § 1533(b)(3); and then citing *Buffalo Field Campaign v. Zinke*, 289 F. Supp. 3d 103, 106 (D.D.C. 2018)).

[18] *Id.* at 6–7 (first citing *Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998); then citing *Warren v. Comm'r of Internal Revenue*, 302 F.3d 1012, 1015 (9th Cir. 2002)).

[19] *Alisal*, 370 F.3d at 919.

protected by law, an inquiry which looks merely for "some law" that protects the asserted interests.[20]

### (a) Protectable interests

The Center asserts interests in the Arctic ringed seal's protection under the ESA, as manifested by its efforts to obtain and defend the listing decision and designation of critical habitat, as well as the species' conservation.[21] Without question, the ESA protects theses interests.[22] Plaintiffs do not, and cannot persuasively, argue otherwise.[23]

To the extent Plaintiffs imply that the Center's interests are limited to the listing decision as opposed to the conservation of the Arctic ringed seal as a whole, they

---

[20] *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (citing *Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1484 (9th Cir. 1993)), *as amended* (May 13, 2003); *see also Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011) ("[T]he operative inquiry should be whether the 'interest is protectable under *some law*' . . ." ((emphasis added) (quoting *Sierra Club*, 995 F.2d at 1484)).

[21] Docket 10-1 at 10, 12.

[22] *See, e.g.*, 16 U.S.C. § 1532(3) (defining "conservation" as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary"); 16 U.S.C. § 1533(b)(2) (directing the ESA's implementing agencies to designate critical habitat); *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 807 F.3d 1031, 1036 (9th Cir. 2015) ("The ESA is a comprehensive scheme with the broad purpose of protecting endangered and threatened species." (internal quotation marks omitted) (citation omitted)); *Alaska Oil and Gas Ass'n v. Jewell*, 815 F.3d 544, 550 (9th Cir. 2016) (noting the ESA's requirement to designate critical habitat within a year of an agency's listing a threatened species); *Citizens for Balanced Use*, 647 F.3d at 897 (ruling that environmental group has significant protectable interest in conserving and enjoying the wilderness character of a national forest in a suit concerning the restriction of vehicle use therein); *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) (noting that wilderness conservation group's interest in preserving wilderness area for the use and enjoyment of its members justified intervention in an action concerning the area's preservation); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (holding that conservation group's interest in the preservation of birds and bird habitat was a significant protectable interest in a suit challenging Department of the Interior actions related to the development of a bird conservation area).

[23] *See generally* Docket 19.

overlook the intricate history leading to the Arctic ringed seal's listing and the integral role the Center played in that process, both of which shape the Center's interests in this litigation.[24] The Center's efforts to secure protections for the species date back to 2008 when it first petitioned NMFS to list the species under the ESA.[25] NMFS issued a 90-day Finding in response to that petition, but only followed up with a 12-month finding on the petition, as required by the ESA, after the Center once again brought suit.[26] The Center's actions contributed to the ultimate listing in December 2012, and the Center intervened in the subsequent challenge by Plaintiffs and others.[27] The Center continued its advocacy in 2019 by challenging NMFS's failure to timely designate critical habitat for the Arctic ringed seal.[28] The Center's interests in this litigation must be viewed against this backdrop, as this is not the first—or second, or third—time the Center has used the legal system in an effort to protect the Arctic ringed seal.[29]

Furthermore, it would be myopic to view the Center's protectable interests in the Arctic ringed seal's listing and conservation as somehow exclusive of an interest in the 90-day Finding challenged in this case.[30] The listing decision is the vehicle unlocking

---

[24] *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397–98 (9th Cir. 1995) (considering, in the context of evaluating whether a significant protectable interest exists, an environmental group's history of engaging in the ESA listing process).

[25] Docket 10-1 at 3.

[26] *Id.*

[27] *Id.* at 4.

[28] *Id.* at 10.

[29] *See Idaho Farm Bureau*, 58 F.3d at 1397 ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." (citations omitted)).

[30] *See* Docket 19 at 7 (suggesting the Center's "sole identified interest [is] in the ringed seal listing").

legal protections for a species, but a party's interest in the listing decision does not preclude its other interests in that species.[31]   Beyond a listing decision, for example, a party's conservation interests may extend to a wide range of actions that impact protected species, including issuance of a biological opinion prepared in connection with a federal project, a rule promulgated pursuant to Section 4(d) of the ESA that exempts certain activities from the ESA's prohibitions, an agency's failure to designate critical habitat for a protected species, or the way in which the government manages a protected species' population.[32] These and other legally protected interests may justify intervention, as Rule 24(a)(2) requires only that a proposed intervenor's interest be "protectable under some law and that there is a relationship between the legally protected interest and the claims at issue."[33] Rule 24(a)(2) does not require the proposed intervenor to assert "a specific legal or equitable interest."[34]   Therefore, the Center need not expressly assert in its motion a specific interest in the 90-day Finding when its broader interests in the Arctic ringed seal's listing and conservation are related to the claims at issue.

---

[31]  *See Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic and Atmospheric Admin.*, 99 F. Supp. 3d 1033, 1045 (N.D. Cal. 2015) ("Because plaintiffs' claims seek to protect threatened species and their habitat, plaintiffs' interests fall clearly within the ESA's . . . zone of interests." (citations omitted)).

[32]  *Ctr. For Biological Diversity*, 807 F.3d at 1035 (challenge to biological opinion prepared in conjunction with groundwater pump test); *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 4951027, at *1 (N.D. Cal. Nov. 18, 2008) (challenge to 4(d) rule and alleged failure to designate critical habitat); *Wild Fish Conservancy v. Irving*, No. 2:14-CV-0306-SMJ, 2015 WL 11117846, at *1 (E.D. Wash. Feb. 26, 2015) (challenge to federal government's management of a fish hatchery).

[33]  *Citizens for Balanced Use*, 647 F.2d at 897 (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)).

[34]  *Blake v. Pallan*, 554 F.2d 947, 952 (9th Cir. 1977) (citations omitted).

### (b) *Relationship to the claims at issue*

Plaintiffs argue there is no relationship between the Center's interests and Plaintiffs' claims.[35]  This is a closer question, as "[a]n applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant."[36]  Plaintiffs maintain that this action focuses on the 90-day Finding and cannot, by itself, result in the Arctic ringed seal's delisting.[37]  Plaintiffs point primarily to their requested remedy, which is vacatur and remand of the 90-day Finding with instructions to NMFS to issue a positive 90-day Finding that delisting the Arctic ringed seal is warranted.[38]  Plaintiffs also request a directive that NMFS "proceed to complete a legitimate review of the species' status in accordance with the requirements of the ESA."[39]  They suggest that, because an order granting the requested relief would not result in the delisting of the Arctic ringed seal, the Court's ultimate decision in this litigation will not have a direct impact on the Center's interests.  The Court agrees with Plaintiffs that any order it might issue in this case will not result in the Arctic ringed seal's delisting.[40]  The Court would not, and cannot, order delisting.[41]  But the inquiry does not end there.

---

[35] Docket 19 at 5–6.

[36] *Arakaki*, 324 F.3d at 1084 (quoting *Donnelly*, 159 F.3d at 410).

[37] Docket 19 at 6.

[38] Docket 1 at 26.

[39] *Id.*

[40] *See, e.g.*, *W. Watersheds Project v. Norton*, No. CV 06-00127-S-EJL, 2007 WL 2827375, at *9 (D. Idaho Sept. 26, 2007) (remanding U.S. Fish and Wildlife Service's 90-day Finding denying environmental group's petition to list the pygmy rabbit with instructions to issue a new 90-day Finding).

[41] *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the

Some district courts in this Circuit facing motions to intervene in ESA suits like this one—where the plaintiffs did not directly challenge a listing decision—have pointed to the extra steps between the challenged action and the listing decision to deny intervention.[42] The common theme underlying these denials is that an interest is related to an action only if the litigation immediately would result in a final action directly affecting the proposed intervenor's interest, such as delisting a protected species or, in a case where the proposed intervenor claims its legal rights or entitlements are at issue, reallocating or diminishing such rights or entitlements. For example, in *Lubchenco*, the District Court for the Northern District of California addressed the converse of the argument the Center asserts here, namely that a challenge to NMFS's failure to list a species could "change[] the status quo from a final determination not to list the species to a situation where listing is again under formal consideration and could ultimately lead to a decision to list the

---

record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

[42] *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, No. 3:21-cv-00455-HZ, 2021 WL 5364190, at *5 (D. Or. Nov. 16, 2021) (denying trade groups' motion to intervene in the Center's challenge to the U.S. Fish and Wildlife Service's reversal of a "warranted, but precluded" finding concerning the listing of the north Oregon coast red tree vole); *Ctr. for Biological Diversity v. Haaland*, Lead Case No. CV 20-181-M-DWM, Member Case No. CV 20-183-M-DWM, 2021 WL 4197426, at *2 (D. Mont. Sept. 15, 2021) (denying trade groups' motion to intervene in the Center's challenge to the withdrawal of a proposed rule to delist the threatened North American wolverine distinct population segment); *S.F. Baykeeper v. U.S. Fish and Wildlife Serv.*, No. 21-cv-02566-JCS, 2021 WL 3426961, at *7 (N.D. Cal. Aug. 5, 2021) (denying water district's motion to intervene in environmental group's challenge to the U.S. Fish and Wildlife Service's issuance of a "warranted, but precluded" finding related to the petitioned listing of a longfin smelt population segment); *Ctr. for Biological Diversity v. Lubchenco*, No. 09-04087 EDL, 2010 WL 1038398, at *8 (N.D. Cal. Mar. 19, 2010) (denying State of Alaska's motion to intervene in the Center's challenge to NMFS's alleged failure to list the ribbon seal).

species, triggering [the] ESA's requirements."[43]  The court rejected this argument, finding that Alaska did not have a significant protectable interest because

> Although this litigation is a first step in a process that could eventually lead to a change in the final listing decision, any outcome here will not compel a decision listing the ribbon seal. Further, Alaska's interest in providing data and information to support a decision not to list the ribbon seal is not yet at issue because any potential impact of this litigation is in the uncertain future.  Regardless of the outcome of this litigation, the ribbon seal would not be listed unless and until the petition is reviewed again and there is a different finding that the ribbon seal warrants listing.[44]

Similar logic could apply here, but this narrow construction of the relationship requirement is not the law.  The Ninth Circuit has eschewed reliance on "bright-line" tests or "technical distinctions" in determining what constitutes a significant protectable interest.[45]  The law instead requires the Court to consider whether resolution of Plaintiffs' claims "actually will affect" the Center or "'may' impair [the Center's] rights 'as a practical matter.'"[46]  This analysis reflects the Ninth Circuit's goal of "involving as many apparently concerned persons as is compatible with efficiency and due process."[47]  The Ninth Circuit has "never said that the litigation must be inextricably tied to the interest or that the litigation must infringe on the core of the protected interest."[48]

---

[43] *Lubchenco*, 2010 WL 1038398, at *3.

[44] *Id.*

[45] *Berg*, 268 F.3d at 818; *see also United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) ("The 'interest' test is not a clear-cut or bright-line rule, because '[n]o specific legal or equitable interest need be established.'" (alteration in original) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993))).

[46] *City of Los Angeles*, 288 F.3d at 398, 401 (citations omitted).

[47] *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citing *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

[48] *Cooper v. Newsom*, 26 F.4th 1104, 1115 (9th Cir. 2022) (Bumatay, J., dissenting).

Given the above, the procedural posture of this litigation and the somewhat narrowly crafted requested remedies do not strip the Center of its protectable interests, provided the Center's claims have a relationship to the claims at issue. The Court finds that the Center's interests do have such a relationship. In essence, Plaintiffs request that the Court direct NMFS to take the first substantial step in the process to delist the Arctic ringed seal and strip it of the protections in which the Center has an interest. It is difficult to imagine how vacatur and remand of the 90-day Finding with instructions to issue a positive 90-day Finding on the delisting petition and initiate review of the Arctic ringed seal's listing status would *not* actually affect the Center's protectable interests or, at the very least, impair them in a practical manner. This remedy would jeopardize the Arctic ringed seal's listing status and disrupt the status quo of the protections in place for the Arctic ringed seal by directing NMFS to find that the Arctic ringed seal's delisting is warranted. Put differently, Plaintiffs seek an order that ties NMFS's hands, putting the agency—and almost certainly the Center—on defense in the battle over the species' protected status. Such an order inevitably would pull the Center back into court if the Center sought to protect its interests, but this time with a presumption inconsonant with those interests. Further, it would become more difficult (albeit still possible) for NMFS to later reverse a positive 90-day Finding after a 12-month review without acting arbitrarily and capriciously in violation of the APA.[49] This would "actually affect" the Center because

---

[49] *See, e.g.*, *WildEarth Guardians v. Haaland*, 561 F. Supp. 3d 890, 906 (C.D. Cal. 2021) (vacating and remanding a U.S. Fish and Wildlife Service 12-month finding that reversed a 90-day Finding that listing may be warranted for the Joshua tree), *appeal dismissed*, No. 21-56316, 2022 WL 2031684 (9th Cir. Feb. 1, 2022); *W. Watersheds Project v. Fish & Wildlife Serv.*, 535 F.

it would become even more difficult for the Center to influence the legal process to uphold the listing decision if NMFS were to take the path Plaintiffs request. This outcome also would result in a "direct, immediate, and harmful" impact on the Center's multifaceted protectable interests in the Arctic ringed seal by impelling the Center to mobilize its resources to protect its interests in the resulting administrative processes. Viewed through this lens, the Center meets the protectable interest and relationship requirements for intervention as of right. Indeed, if Plaintiffs did not seek to actually affect—and impair—the Center's interests in the protection of the Arctic ringed seal, why did they bring this suit?

Even if the foregoing impact were too attenuated to constitute a "direct, immediate, and harmful" impact on the Center's protectable interests, a "direct, immediate, and harmful effects" standard is not the law in this Circuit. Plaintiffs conflate a sufficient condition for intervention as of right into a necessary condition. In *Forest Conservation Council v. United States Forest Service*,[50] the Ninth Circuit held that a requested remedy's having "direct, immediate, and harmful effects" on a proposed intervenor's protectable interests is *sufficient* to satisfy the interest test of Rule 24(a)(2). Neither that decision nor its progeny establish this as a *necessary* condition for mandatory intervention under Rule 24(a)(2).[51] Although other district courts may have interpreted this language in that

_____

Supp. 2d 1173, 1189 (D. Idaho 2007) (vacating and remanding a U.S. Fish and Wildlife Service 12-month finding that reversed a 90-day Finding that listing may be warranted for the greater sage-grouse).

[50] 66 F.3d 1489, 1494 (9th Cir. 1995).

[51] In *Forest Conservation Council*, the court held:

> We resolve this dispute by holding that when, as here, the injunctive relief sought by plaintiffs will have direct, immediate, and harmful

manner,[52] the Court declines to apply "such technical distinctions" to restrict the liberal standard favoring intervention absent clear direction from the Ninth Circuit.[53]

## 2. Impairment of interests

The preceding discussion makes clear that disposition of this action may impair or impede the Center's ability to protect its interests.[54] Plaintiffs nonetheless contend that resolution of this action cannot impair the Center's interests because "it can protect [its] interest[s] in a variety of forums even if Plaintiffs prevail on their claims and obtain a positive 90-day finding."[55] Plaintiffs point to potential opportunities in the future to provide public comment on the Arctic ringed seal's listing or pursue subsequent litigation if NMFS delists the species.[56]

---

        effects upon a third party's legally protectable interests, that party satisfies the "interest" test of Fed.R.Civ.P. [sic] 24(a)(2); he has a significantly protectable interest that relates to the property or transaction that is the subject of the action.

*Id.*; *see also Berg*, 268 F.3d at 818 ("An applicant demonstrates a 'significantly protectable interest' when 'the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests.'" (quoting *Forest Conservation Council*, 66 F.3d at 1494)).

[52] *See, e.g.*, *Ctr. for Biological Diversity*, 2021 WL 5364190, at *2 ("When a plaintiff seeks injunctive relief, the relief sought *must* 'have direct, immediate, and harmful effects upon [the proposed intervenor's] legally protectable interest.'" (alteration in original) (emphasis added) (quoting *Berg*, 268 F.3d at 818)).

[53] *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (authorizing health care providers to intervene in case challenging federal appropriations rider that did not establish enforceable rights or protect the providers' existing rights).

[54] *See Berg*, 268 F.3d at 822 ("We follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" (alteration in original) (quoting Fed. R. Civ. P. 24 advisory committee note to 1966 amendment)); *Lockyer*, 450 F.3d at 442 ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it." (citing *Berg*, 268 F.3d at 822)).

[55] Docket 19 at 7.

[56] *Id.* at 8.

The cases Plaintiffs cite in support of this argument accurately capture the governing legal principle, which is that proposed intervenors' interests "might not be *impaired* if they have 'other means' to protect them."[57]  But the Center has no "other means" to protect its interest in NMFS's 90-day Finding.  By the time the Center would have an opportunity to defend its interests in another lawsuit or public comment process, NMFS already may have issued a positive 90-day Finding that sets the stage for it to delist the Arctic ringed seal.  Plaintiffs are correct that the Center would have multiple opportunities in the future to advocate for continued protections, but the status quo in favor of those protections would be eviscerated by that point.  There is nothing else the Center can do now to defend the protections it devoted years to secure.  Hence, unlike in *Alisal*, where "the district court had set up a separate process . . . that was sufficient to protect the proposed intervenor's interests," the Center would have no other way to protect itself besides waiting for NMFS to act and then responding to NMFS's decision.[58]

Plaintiffs nevertheless urge the Court to adopt the reasoning of the U.S. District Court for the District of Oregon in *Wild Swan*.[59]  There, environmental groups challenged the U.S. Fish and Wildlife Service's decision not to list the bull trout as an endangered species.[60]  Citing economic interests that might be harmed from a decision to list the bull trout as endangered, the proposed intervenors included "riparian landowners

---

[57] *Lockyer*, 450 F.3d at 442 (quoting *Alisal*, 370 F.3d at 921); Docket 19 at 7–8 (first citing *Alisal*, 370 F.3d at 921; then citing *Warren*, 302 F.3d at 1015; and then citing *Friends of the Wild Swan, Inc. v. U.S. Fish and Wildlife Service*, 896 F. Supp. 1025, 1028 (D. Or. 1995)).

[58] *Lockyer*, 450 F.3d at 442 (citing *Alisal*, 370 F.3d at 921).

[59] Docket 19 at 8–9.

[60] *Wild Swan*, 896 F. Supp. at 1026.

whose property contains bull trout and bull trout habitat, timber companies that hold federal timber sale contracts in national forest watersheds containing bull trout and bull trout habitat, and a sport fisherman guide."[61]  Because the only lawful remedy available was invalidation of the agency's decision and remand to the agency for further consideration, rather than an order that the agency list the bull trout as endangered, the court found that the proposed intervenors' economic interests were not in danger of actually being impaired by the disposition of that litigation.[62]  Plaintiffs contend that the procedural posture in *Wild Swan* is analogous because the only possible recourse is remand to NMFS to reconsider the 90-day Finding.[63]

       The Court recognizes the procedural similarities between the instant case and *Wild Swan*.  But these similarities do not bind this Court.  They also do not account for the distinction between the Center's expansive interests threatened here and the narrower economic interests at issue in *Wild Swan*.  There, the proposed intervenors' interests were solely economic in nature, and there was no way for a decision in favor of the environmental groups to result in direct economic harm to the proposed intervenors.[64]  Only the listing decision could result in direct economic harm to those proposed intervenors because that decision is what would limit the activities from which they derived economic benefit.  Here, by contrast, the Center's actions leading to and defending the listing decision manifest a fidelity of purpose extending beyond attenuated economic interests.  Vacatur of

---

[61]  *Id.*
[62]  *Id.* at 1027–28.
[63]  Docket 19 at 8–9.
[64]  *Wild Swan*, 896 F. Supp. at 1027–28.

the 90-day Finding and a mandate to issue a positive 90-day Finding would impair the Center's specific interest in the 90-day Finding. And even if the Court lacks authority to mandate a substantive outcome (*e.g.*, issuance of a positive 90-day Finding), a decree holding unlawful the 90-day Finding and remanding the matter to the agency with specific instructions to reconsider the decision would impair the Center's interests. For these reasons, the Court finds inapplicable *Wild Swan* and the other similar district court decisions.

This is not to say that the decisions from those courts are incorrect or that this Court universally will find that future proposed intervenors have carte blanche to join any ESA suit in which they have a conservation interest in the species at issue. To the contrary, the Court's decision today recognizes that a party's interest in a case must be viewed in its proper context. That context includes the degree to which the party expended resources, time, and energy to achieve the result being threatened as well as the practical impact the threat has on the proposed intervenor. In other words, it is not sufficient for a party simply to embrace a general ideological endeavor that may be frustrated by pending litigation; that party must wed its institutional desires with a history of action relating to the specific issue or issues at the core of the litigation. Only then would disposition of the litigation fairly have the potential to, "as a practical matter[,] impair or impede the movant's ability to protect its interest."[65] By considering the full breadth of a party's interests in light of the prior related actions that party took in direct relation to the issue

---

[65] Fed. R. Civ. P. 24(a)(2).

being litigated, a district court fulfills its mandate to liberally construe Rule 24 in favor of intervention.[66]

In applying that principle here, the Court finds that it is likely a decision ordering NMFS to reconsider the 90-day Finding would require the Center to expend resources, time, and energy to defend the outcome for which it has long advocated—or risk losing that outcome altogether. Such a decision also would immediately weaken the Center's litigation position and decrease the likelihood the Arctic ringed seal would continue to be protected in the future, even if the ultimate listing decision were to remain unchanged. These are practical impairments to a party that invested over 15 years to reach the outcome threatened by Plaintiffs' suit. For these reasons, the Center has met its burden of demonstrating that the disposition of this action may, as a practical matter, impair or impede its ability to protect its interests.

### 3. Inadequacy of representation

In evaluating the degree to which existing parties will adequately represent a proposed intervenor's interests, the Court considers three factors: "whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that the other parties would neglect."[67] "When an applicant for intervention and an existing party have the same

---

[66] See *Idaho Farm Bureau*, 58 F.3d at 1397–98 (describing proposed intervenors' history of actively engaging in the ESA listing process).

[67] *California v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775, 778 (9th Cir. 1986) (citations omitted).

ultimate objective, a presumption of adequacy of representation arises."[68]  Still, "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate."[69]

NMFS's answer and the Center's proposed answer suggest that both share the same ultimate objective, which is to defend the 90-day Finding from Plaintiffs' claims.[70]  Thus, a presumption of adequacy of representation arises.  The Center argues that it overcomes this presumption because of the history of adversarial proceedings between it and NMFS concerning the Arctic ringed seal's listing.[71]  The Center also maintains that NMFS must represent "the broad public interest," while the Center "is narrowly focused on conserving the ringed seal."[72]  Lastly, the Center predicts that it and NMFS will present different arguments to the Court.[73]

Plaintiffs allege that the Center has not overcome the presumption of adequacy because NMFS likely will make "whatever arguments are necessary to uphold[]" the 90-day Finding, notwithstanding the prior adversarial litigation between the two.[74]  Plaintiffs contend that, by statute, NMFS's review of their petition was limited to NMFS's files, leaving no room for the Center to advance alternative arguments in favor of upholding

---

[68] *Arakaki*, 324 F.3d at 1086 (citing *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997)).

[69] *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086).

[70] *Compare* Docket 18 at 13 ¶ 66 (denying Plaintiffs' claims regarding legality of the 90-day Finding), *with* Docket 10-2 at 17 ¶ 66 (same).

[71] Docket 20 at 9–10 (citing *Idaho Farm Bureau*, 58 F.3d at 1397).

[72] *Id.* at 10.

[73] *Id.*

[74] Docket 19 at 10.

the 90-day Finding.[75]  Plaintiffs attempt to distinguish the cases the Center cited in its motion because they concerned challenges to agency actions directly supported by the proposed intervenor, whereas Plaintiffs contend that "the Center had nothing to do with the challenged Negative 90-day Finding."[76]

The Court finds that the Center has rebutted the presumption of adequacy of representation.  NMFS and the Center, while sharing an interest in the protection of the Arctic ringed seal, do not necessarily share all of the same interests.[77]  As the Center points out, NMFS may seek to balance its interest in its relationship with the State of Alaska with its interest in environmental protection, a factor the Center need not consider given its more narrow focus on conservation of the Arctic ringed seal.[78]  Indeed, NMFS's history of establishing protections for the Arctic ringed seal is somewhat dilatory.[79]  Were it not for the Center's extensive advocacy and litigation efforts, NMFS in all likelihood would not have listed the species and designated critical habitat when it did.  This adversarial history is an important consideration in determining adequacy of representation and suggests NMFS may not be capable of or willing to make all arguments the Center would make to

---

[75] *Id.*

[76] *Id.* at 10–12 (citing *Idaho Farm Bureau*, 58 F.3d at 1397).

[77] *See Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

[78] Docket 10-1 at 18.

[79] *See* Docket 10-1 at 3–6, 10–11 (describing three suits the Center filed to compel NMFS to list the Arctic ringed seal and designate critical habitat).

*Alaska v. Nat'l Marine Fisheries Serv. et al.*                                    Case No. 3:22-cv-00249-JMK
Order Granting Motion to Intervene                                                                      Page 20
Case 3:22-cv-00249-JMK   Document 22   Filed 04/05/23   Page 20 of 24

defend the Arctic ringed seal's listing.[80]  For instance, the Center notes that NMFS may not make arguments concerning what the Center views as the "overwhelming scientific consensus" that climate change will harm the Arctic ringed seal's habitat, the inadequacy of existing regulatory mechanisms to address the threat of climate change, and reasons why the species must remain listed under the ESA.[81]  There is no indication NMFS made these arguments in denying Plaintiffs' petition, and likewise there is no guarantee that NMFS will make these arguments before the Court.[82]  Both the first and second factors lean in favor of intervention.

Plaintiffs' remaining argument on this point is unavailing.  Plaintiffs argue that NMFS will make all arguments the Center could make because the record is limited to NMFS's files and Plaintiffs' petition and cannot include other evidence.[83]  This limitation does not mean that NMFS will make "all" of the arguments the Center plans to make.[84] The Center has identified alternative arguments likely to be permissible given the record before the agency.  Regardless, the Center may have a different perspective on the implications from the record before NMFS when it denied Plaintiffs' petition.  Similarly, even if the Center were to raise arguments that ultimately do not prevail, such alternative

---

[80] *Idaho Farm Bureau*, 58 F.2d at 1398 (affirming grant of intervention as of right upon finding that agency was "unlikely to make strong arguments in support of its own actions" that followed a suit to compel such actions from environmental group).
[81] Docket 10-1 at 19.
[82] *See W. Watersheds Project v. Haaland*, 22 F.4th 828, 841 (9th Cir. 2022) (ruling that inadequacy of representation existed because proposed intervenor identified three arguments that a party had not yet raised before the district court).
[83] Docket 19 at 10.
[84] *Tahoe Reg'l Plan. Agency*, 792 F.2d at 778 (citations omitted).

*Alaska v. Nat'l Marine Fisheries Serv. et al.*                                      Case No. 3:22-cv-00249-JMK
Order Granting Motion to Intervene                                                                      Page 21
Case 3:22-cv-00249-JMK   Document 22   Filed 04/05/23   Page 21 of 24

arguments need only be "reasonable" to meet the lenient standard for determining adequacy of representation.[85]

The remaining factor also favors intervention. The Center's extensive efforts over the last 15 years suggest it may "offer . . . necessary elements to the proceedings that the other parties would neglect."[86] The Center has developed independent expertise on specific issues facing the Arctic ringed seal and the science surrounding the climate impacts that threaten its critical habitat.[87] Specifically, it employs an expert who has authored several ESA petitions and a report "that reviews the scientific literature on the profound climactic changes occurring in the Arctic and how these changes are impacting Arctic wildlife, including the ringed seal."[88] This expert "regularly communicate[s] with scientists that research Arctic climate change to discuss and understand their research findings, regularly attend[s] scientific conference panels and webinars on Arctic climate change, and ha[s] contributed to climate change adaptation and mitigation plans related to Arctic climate change and its impacts on wildlife."[89] This scientific expertise in Arctic warming and its impacts on wildlife, coupled with the Center's extensive involvement in this specific listing decision, should help elucidate the issues before the Court.

Finally, there is no indication that Plaintiffs or NMFS consistently have demonstrated the same degree of expertise in the science of climate impacts on the Arctic

---

[85] *W. Watersheds Project*, 22 F.4th at 841 (emphasis omitted) (quoting *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012)).
[86] *Tahoe Reg'l Plan. Agency*, 792 F.2d at 778 (citations omitted).
[87] *See generally* Docket 10-3 (Shaye Wolf Decl.).
[88] Docket 10-3 at 4 ¶¶ 9–10.
[89] *Id.* at 4 ¶ 10.

ringed seal and its habitat. Although NMFS is the expert agency charged with implementing the ESA and should have a firm grasp on the changing climate's impacts on the Arctic ringed seal, it has not always analyzed fully the effects of climate change on protected species.[90] And given their efforts to reverse the species' listing, it is even more dubious that Plaintiffs would provide such a view.[91]

The Center's interests are not represented adequately by the existing parties in this litigation. Therefore, the Center meets all of Rule 24(a)(2)'s requirements and must be permitted to intervene as of right.

## B. Permissive Intervention

Because the Center must be permitted to intervene as of right, the Court need not and does not reach the Center's arguments in favor of permissive intervention.

## III. CONCLUSION

In light of the above, the Center's Motion to Intervene at Docket 10 is **GRANTED**. The Center is joined as a Defendant Intervenor in this case, and the case caption is modified accordingly as set forth above.

---

[90] *See, e.g.*, *Oceana, Inc. v. Pritzker*, 125 F. Supp. 3d 232, 252 (D.D.C. 2015) (remanding biological opinion to NMFS to "more clearly explain [the] connection between the record evidence of present and short-term effects caused by climate change, and the agency's conclusion that climate change will not result in any significant effects on the species in the short-term future"); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 606 F. Supp. 2d 1122, 1184 (E.D. Cal. 2008) (granting summary adjudication in challenge to biological opinion because of NMFS's "total failure to address, adequately explain, and analyze the effects of global climate change" on salmonid species).

[91] *See generally* Docket 1.

*Alaska v. Nat'l Marine Fisheries Serv. et al.*
Order Granting Motion to Intervene

Case No. 3:22-cv-00249-JMK
Page 23

Case 3:22-cv-00249-JMK   Document 22   Filed 04/05/23   Page 23 of 24

ringed seal and its habitat. Although NMFS is the expert agency charged with implementing the ESA and should have a firm grasp on the changing climate's impacts on the Arctic ringed seal, it has not always analyzed fully the effects of climate change on protected species.[90] And given their efforts to reverse the species' listing, it is even more dubious that Plaintiffs would provide such a view.[91]

The Center's interests are not represented adequately by the existing parties in this litigation. Therefore, the Center meets all of Rule 24(a)(2)'s requirements and must be permitted to intervene as of right.

## B. Permissive Intervention

Because the Center must be permitted to intervene as of right, the Court need not and does not reach the Center's arguments in favor of permissive intervention.

## III. CONCLUSION

In light of the above, the Center's Motion to Intervene at Docket 10 is **GRANTED**. The Center is joined as a Defendant Intervenor in this case, and the case caption is modified accordingly as set forth above.

---

[90] *See, e.g.*, *Oceana, Inc. v. Pritzker*, 125 F. Supp. 3d 232, 252 (D.D.C. 2015) (remanding biological opinion to NMFS to "more clearly explain [the] connection between the record evidence of present and short-term effects caused by climate change, and the agency's conclusion that climate change will not result in any significant effects on the species in the short-term future"); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 606 F. Supp. 2d 1122, 1184 (E.D. Cal. 2008) (granting summary adjudication in challenge to biological opinion because of NMFS's "total failure to address, adequately explain, and analyze the effects of global climate change" on salmonid species).

[91] *See generally* Docket 1.

IT IS SO ORDERED this 5th day of April, 2023, at Anchorage, Alaska.


_____
*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge