TREG TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov

FENNEMORE CRAIG P.C.
Norman D. James (AZ Bar No. 006901)
Tyler D. Carlton (AZ Bar No.035275)
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5000
Facsimile: (602) 916-5546
Email:  njames@fennemorelaw.com
        tcarlton@fennemorelaw.com
(*admitted pro hac vice*)

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA; AND NORTH SLOPE BOROUGH,<br><br>       Plaintiffs,<br><br>  v.<br><br>NATIONAL MARINE FISHERIES SERVICE,<br><br>       Defendant,<br><br>  and<br><br>CENTER FOR BIOLOGICAL DIVERSITY,<br><br>       Intervenor-Defendant. | Case No. 3:22-cv-00249-JMK<br><br><br>**STATE OF ALASKA'S NOTICE OF APPEAL** |

48756711

Notice is given that Plaintiff State of Alaska hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Order Denying Plaintiffs' Challenge (ECF 38), which was entered on March 20, 2024, and denied all relief sought in this case. A copy of the Order is attached hereto as Exhibit 1.

A representation statement that identifies the parties to this case and their legal counsel is set forth below pursuant to Ninth Circuit Rule 3-2.

RESPECTFULLY SUBMITTED this 13th day of May, 2024.

FENNEMORE CRAIG, P.C.

By  */s/ Norman D. James*
    Norman D. James
    Tyler D. Carlton

    *Attorneys for Plaintiffs*

1

## Representation Statement

## United States District Court for the District of Alaska

## No. 3:22-cv-00249-JMK

**Plaintiff/Appellant State of Alaska**

Appellant's Counsel:

**Ronald W. Opsahl**
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov

**Norman D. James**
Fennemore Craig P.C.
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5346
Facsimile: (602) 916-5546
Email: njames@fennemorelaw.com

**Tyler D. Carlton**
Fennemore Craig P.C.
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5404
Facsimile: (602) 916-5546
Email: tcarlton@fennemorelaw.com

**Additional Plaintiff North Slope Borough[1]**

Counsel for North Slope Borough:

---

[1] At this time, it is not known whether North Slope Borough will appeal.

48756711

**Norman D. James**
Fennemore Craig P.C.
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5346
Facsimile: (602) 916-5546
Email: njames@fennemorelaw.com

**Tyler D. Carlton**
Fennemore Craig P.C.
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5404
Facsimile: (602) 916-5546
Email: tcarlton@fennemorelaw.com

**Defendant/Appellee National Marine Fisheries Service**

Defendant/Appellee's Counsel:

**Bonnie Ballard**
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
202-305-1513
Email: bonnie.m.ballard@usdoj.gov

**Intervenor-Defendant/Appellee Center for Biological Diversity**

Defendant-Intervenor's Counsel:

**Kristen Angela Monsell**
Center of Biological Diversity (Oakland)
1212 Broadway, Suite 800
Oakland, CA 94612
510-844-7137
Email: kmonsell@biologicaldiversity.org

**Emily S. Jeffers**
Center of Biological Diversity (Oakland)
1212 Broadway, Suite 800
Oakland, CA 94612
415-632-5309
Fax: 415-436-9683
Email: ejeffers@biologicaldiversity.org

48756711

## CERTIFICATE OF SERVICE

I certify that on **May 13, 2024**, the foregoing was served electronically on all parties listed on the CM/ECF system.

*/s/ Andrea L. Parker*

48756711

# EXHIBIT 1

# ORDER DENYING PLAINTIFFS' CHALLENGE (ECF 38)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

STATE OF ALASKA, and NORTH
SLOPE BOROUGH,

                Plaintiffs,

    vs.

NATIONAL MARINE FISHERIES
SERVICE,

                Federal Defendant,

    and

CENTER FOR BIOLOGICAL
DIVERSITY,

                Defendant Intervenor.

Case No. 3:22-cv-00249-JMK

**ORDER DENYING
PLAINTIFFS' CHALLENGE**

        Pending before the Court at Docket 26 is Plaintiffs' challenge to the National

Marine Fisheries Service's ("NMFS'") decision not to delist the Arctic ringed seal as an

endangered species following their 2019 petition.  The Center for Biological Diversity

("Center") intervened as a Defendant.[1]  Plaintiffs' Motion is fully briefed.[2]  As set forth

below, Plaintiffs' request is **DENIED**.

---

[1] Docket 22.
[2] Docket 28; Docket 29; Docket 30.

# I.  BACKGROUND

## A.  Statutory/Regulatory Framework

The purpose of the Endangered Species Act ("ESA") is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species."[3]  The ESA defines endangered species as "any species which is in danger of extinction throughout all or a significant portion of its range," and threatened species as "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."[4]  Species that are "listed" as either endangered or threatened enjoy several statutory protections under the ESA.[5]

NMFS must consider five factors when determining whether a species should be protected under the ESA, "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence."[6]  NMFS must make its determination "solely on the basis of the best scientific and commercial data available."[7]

---

[3]  16 U.S.C. § 1531(b).
[4]  16 U.S.C. § 1532(6) & (20).
[5]  *E.g.,* 16 U.S.C. § 1536(a)(2) (prohibiting federal agencies from performing actions that would directly "jeopardize the continued existence" of any listed species, or negatively affect critical habitat).
[6]  16 U.S.C. § 1533(a)(1).
[7]  16 U.S.C. § 1533(b)(1)(A).

*State of Alaska, v. National Marine Fisheries Service*                    Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge                                        Page 2

Case 3:22-cv-00249-JMK   Document 44   Filed 05/20/24   Page 9 of 25

Under the ESA, an "interested person" may petition NMFS to add or remove a species from being listed as either endangered or threatened.[8]  After receiving a petition to delist a species, NMFS must make a finding as to "whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."[9]  "To the maximum extent practicable," NMFS should make this determination within 90 days of receiving the petition.[10]  If NMFS finds that a petition presents such information that delisting may be warranted, it must publish the positive result of its 90-day review finding and commence a 12-month "review of the status of the species."[11]  If NMFS finds that the petition does not present information indicating that the petitioned action may be warranted, it similarly must publish its negative finding, but is not required to conduct a "review of the status of the species."[12]

"[S]ubstantial scientific or commercial information," which may indicate that a petitioned listing or delisting may be warranted, "refers to credible scientific or commercial information in support of the petition's claims such that a reasonable person conducting an impartial scientific review would conclude that the action proposed in the petition may be warranted."[13]  NMFS must apply the "substantial scientific or commercial information" standard in light of its previous findings concerning "the listing status of the

---

[8] 16 U.S.C. § 1533(b)(3)(A).
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*; *see also* 50 C.F.R. § 424.14(h)(1) (2016).
[13] 50 C.F.R. § 424.14(h)(1)(i) (2016) (internal quotation marks omitted).

species that is the subject of the petition."[14]  Generally, a petition does not contain "substantial scientific and commercial information indicating that the action may be warranted unless the petition provides new information not previously considered."[15]

## B.  Ringed Seal Listing

In 2008, NMFS began considering whether to list the ringed seal under the ESA.[16]  As part of that consideration, NMFS examined a petition from the Center to list the ringed seal because of potential threats to its habitat, such as the loss of sea ice due to climate change.[17]  NMFS "published a 90-day finding that the petition presented substantial scientific or commercial information indicating that the petitioned action may be warranted."[18]  NMFS established a Biological Review Team ("BRT") to perform the 12-month review of the status of the ringed seal.[19]  The BRT consisted of various experts, including "a climate scientist from NMFS' Alaska and Northeast Fisheries Science Centers."[20]  The BRT concluded that there are five recognized subspecies of the ringed seal, including the Arctic ringed seal.[21]

On December 10, 2010, NMFS published its 12-month finding and proposed to list the Arctic ringed seal.[22]  Subsequently, on December 13, 2011, NMFS noted there

---

[14] 50 C.F.R. § 424.14(h)(1)(iii) (2016).

[15] Id.

[16] ENDANGERED AND THREATENED SPECIES; THREATENED STATUS FOR THE ARCTIC, OKHOTSK, AND BALTIC SUBSPECIES OF THE RINGED SEAL AND ENDANGERED STATUS FOR THE LADOGA SUBSPECIES OF THE RINGED SEAL, 77 Fed. Reg. 76706 (Dec. 28, 2012).

[17] Id.

[18] Id.

[19] Id.

[20] Id.

[21] Id.

[22] Id. at 76706–07.

*State of Alaska, v. National Marine Fisheries Service*                                        Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge                                                                                    Page 4

Case 3:22-cv-00249-JMK   Document 43   Filed 05/30/24   Page 11 of 25

was "disagreement related to the model projections and analysis of future sea ice habitat, in particular snow cover, for Arctic ringed seals."[23] In response to that disagreement, NMFS extended the timelines for making a final listing decision to accommodate additional data and review.[24] On December 28, 2012, NMFS issued a final decision to list the Arctic ringed seal.[25]

NMFS ultimately concluded that "[t]he principal threat to ringed seals is habitat alteration stemming from climate change."[26] Arctic ringed seals "are vulnerable to habitat loss from changes in the extent or concentration of sea ice because they depend on this habitat for pupping, nursing, molting, and resting."[27] Arctic ringed seals create subnivean[28] birth lairs the in the snow that has accumulated on stable ice.[29] If the amount of snow above the birth lair is insufficient, the seal pups are vulnerable to predation and hypothermia.[30]

NMFS previously used climate change projections to identify risks to the ribbon seals through the year 2050.[31] When analyzing threats to the Arctic ringed seal, NMFS relied on a revised "analytical approach to the foreseeability of threats due to

---

[23] *Id.* at 76707.
[24] *Id.*
[25] *See id.*
[26] *Id.*
[27] *Id.* at 76709.
[28] Subnivean, oed.com, https://www.oed.com/search/dictionary/?scope=Entries&q=subnivean (last visited Feb. 27, 2024) ("Existing, living, or carried out underneath snow.").
[29] ENDANGERED AND THREATENED SPECIES; THREATENED STATUS FOR THE ARCTIC, OKHOTSK, AND BALTIC SUBSPECIES OF THE RINGED SEAL AND ENDANGERED STATUS FOR THE LADOGA SUBSPECIES OF THE RINGED SEAL, 77 Fed. Reg. at 76709.
[30] *Id.*
[31] *Id.* at 76722.

*State of Alaska, v. National Marine Fisheries Service*          Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge                                        Page 5

Case 3:22-cv-00249-JMK   Document 48   Filed 05/23/24   Page 12 of 25

climate change" that is a "more threat-specific approach."[32]  NMFS noted that by 2100, "April snow cover is forecasted to become inadequate for the formation and occupation of ringed seal birth lairs over much of the [Arctic ringed seal's] range."[33]  NMFS summarized that "[c]limate models consistently project overall diminishing sea ice and snow cover at least through the current century, with regional variation in the timing and severity of those losses."[34]  It added that "the overall trend is clear:  Ringed seals will face an increasing degree of habitat modification through the foreseeable future."[35]

NMFS determined that the existing regulatory mechanisms were inadequate to address the threats to the Arctic ringed seals in a meaningful way.[36]  Because "the scientific consensus projections are for continued and perhaps accelerated warming in the foreseeable future," NMFS chose to use projections based on the assumptions that no new regulatory scheme would be implemented to curb greenhouse gas emissions ("GHGs").[37]

One of the peer reviewers objected to using model predictions "beyond mid-century because they rely on assumptions about future policy decisions that will affect GHG emissions and are thus highly speculative."[38]  NMFS responded, indicating that the Intergovernmental Panel on Climate Change's ("IPCC's") Fourth Assessment Report ("AR4") utilized six emissions scenarios based on differing assumptions of socioeconomic

---

[32] *Id.* at 76707.
[33] *Id.* at 76710.
[34] *Id.* at 76711.
[35] *Id.*
[36] *Id.* at 76712 ("Current mechanisms do not effectively regulate [greenhouse gas] emissions, which are contributing to global climate change and associated modifications to ringed seal habitat.").
[37] *Id.*
[38] *Id.* at 76722.

factors that could impact emissions through the end of the 21st century.[39] NMFS considered only "model projections of sea ice developed using the A1B scenario, a medium 'business-as-usual' emissions scenario, as well the A2 scenario, a high emissions scenario, to represent a significant range of variability in future emissions."[40] NMFS explained that this approach is consistent with the ESA because NMFS can only consider "formalized conservation efforts that are sufficiently certain to be implemented and effective."[41]

## C.     Petition to Delist and 90-Day Finding

On March 26, 2019, Plaintiffs, along with the Arctic Slope Regional Corporation and the Iñupiat Community of the Arctic Slope, petitioned NMFS to delist the Arctic ringed seal.[42] The Petition relied on (1) the decision declining to list the Pacific walrus by the United States Fish and Wildlife Service ("USFWS")[43], (2) high variability for projected climate conditions in the second half of the century predicted by the IPCC's fifth assessment report ("AR5"),[44] (3) post-listing, biological/population data of the Arctic ringed seal,[45] (4) uncertainty concerning impacts of ocean acidification on the Arctic ringed seals,[46] and (5) new efforts to address GHG emissions.[47] On November 27, 2020, NMFS

---

[39] *Id*. at 76722–23 ("The IPCC's AR4 used state-of-the-art AOGCMs under six 'marker' scenarios from the Special Report on Emissions Scenarios (SRES; IPCC, 2000) to develop climate projections under clearly stated assumptions about socioeconomic factors that could influence the emissions. Conditional on each scenario, the best estimate and likely range of emissions were projected through the end of the 21st century.").

[40] *Id*. at 76723.

[41] *Id*.

[42] NMFS00073.

[43] NMFS00120–21.

[44] NMFS00122.

[45] NMFS00124–26.

[46] NMFS00126–27.

[47] NMFS00128.

issued its 90-Day Finding, which analyzed the six types of materials relied on by the Petition.[48]

First, NMFS addressed the Petition's assertion that NMFS should follow USFWS' analysis, which considered threats to the Pacific walrus through 2060 to be the "foreseeable future as it relates to the status of this species."[49] NMFS explained "that the foreseeability of threats to the species and the species' response is case-specific," taking into consideration the "life history and habitat characteristics and threat projection timeliness" of a specific species.[50] According to NMFS, the "USFWS explained that, given the ability of the Pacific walrus to change its behavior and/or adapt to environmental stressors, there was much less confidence in predicting Pacific walruses' behavioral responses under increasing environmental stressors out to 2100."[51] Arctic ringed seals do not exhibit the same adaptability as the Pacific walrus because they depend on subnivean birth lairs for their pups to survive.[52] NMFS noted that the Petition failed to provide materials indicating that the Arctic ringed seal is adaptable, like the Pacific walrus.[53] NMFS concluded that the Petition's reliance on the USFWS' determination did not provide

---

[48] *See generally* ENDANGERED AND THREATENED WILDLIFE; 90-DAY FINDING ON A PETITION TO DELIST THE ARCTIC SUBSPECIES OF RINGED SEAL UNDER THE ENDANGERED SPECIES ACT, 85 Fed. Reg. 76018-01 (Nov. 27, 2020).

[49] *Id.* at 76022 (referencing ENDANGERED AND THREATENED WILDLIFE AND PLANTS; 12-MONTH FINDINGS ON PETITIONS TO LIST 25 SPECIES AS ENDANGERED OR THREATENED SPECIES, 82 Fed. Reg. 46643 (Oct. 5, 2017)).

[50] ENDANGERED AND THREATENED WILDLIFE; 90-DAY FINDING ON A PETITION TO DELIST THE ARCTIC SUBSPECIES OF RINGED SEAL UNDER THE ENDANGERED SPECIES ACT, 85 Fed. Reg. at 76022.

[51] *Id.*

[52] *Id.* at 76022–23.

[53] *Id.*

new information because of the difference in behavioral adaptability between the Pacific walrus and the Arctic ringed seal.

Second, NMFS analyzed the Petition's reliance on IPCC's AR5, ultimately concluding that it did not provide "new information or a new analysis not previously considered in our listing determination for the Arctic ringed seal."[54]  NMFS acknowledged that AR5 was released after the listing decision had been made, but explained that the divergence in the climate projections for the second half of the century were due to different assumptions concerning future emissions of GHGs.[55]  "The petition claims that the latest published research indicates that international and domestic policy commitments will result in the climate system following a trajectory more closely corresponding to the intermediate stabilization scenario considered in the AR5 (in which emissions peak around 2040 and then decline and stabilize)."[56]  However, according to NMFS, "the analysis cited in the petition to support this assertion (Salawitch et al., 2017) does not, in fact, reach that conclusion."[57]  In the absence of low GHG emissions scenarios, the AR5 modeling provides similar climate projections as the AR4 modeling, used in the listing decision.[58] The significant difference between the two climate projections can be attributed to one scenario used in AR5 that "assumes unprecedented global GHG emissions reductions and

---

[54] *Id*. at 76022.
[55] *Id*.
[56] *Id*. at 76023.
[57] *Id*.
[58] *Id*. at 76022 ("As we explained in the final listing rule, although the magnitude of the warming depends somewhat on the assumed emissions scenario, the trend is clear and unidirectional (77 FR 76723; December 28, 2012).  This is also the case for climate model projections under the scenarios considered in the AR5, aside from a scenario that assumes unprecedented global GHG emissions reductions and new technologies.").

*State of Alaska, v. National Marine Fisheries Service*          Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge          Page 9
Case 3:22-cv-00249-JMK   Document 43   Filed 05/23/24   Page 16 of 25

new technologies."[59]  Without support that such drastic reductions likely would take place, NMFS concluded that "model projections developed for the AR5 does not constitute new information or a new analysis not previously considered in our listing determination for the Arctic ringed seal."[60]

Third, NMFS reviewed biologic and population studies included in the Petition that suggested that the Arctic ringed seal population currently is stable.[61]  While some of the data became available after the listing decision, NMFS concluded that the "information is consistent with the data considered in our listing determination for the Arctic ringed seal" and therefore did not present new information.[62]

Fourth, NMFS reviewed the assertion that "there is a significant degree of uncertainty regarding the impacts of ocean acidification on Arctic ringed seals."[63]  NMFS noted that the material relied on for this assertion was "largely in agreement with the information compiled in the Status Review Report and the reasoning and conclusions made in our listing determination for the Arctic ringed seal" and therefore was not new information.[64]

Fifth, NMFS considered the assertion made in the Petition that the Paris Agreement will effectively manage GHG emissions.[65]  It noted that "the petition does not

---

[59] *Id.*
[60] *Id.*
[61] *Id.* at 76024.
[62] *Id.*
[63] *Id.* at 76025–26.
[64] *Id.* at 76026.
[65] *Id.*

*State of Alaska, v. National Marine Fisheries Service*                    Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge                                                              Page 10

Case 3:22-cv-00249-JMK   Document 44   Filed 05/20/24   Page 17 of 25

provide any evidence that the goals of the Paris Agreement will be met, and on November 4, 2019, the U.S. Secretary of State submitted formal notification to the United Nations of United States' intent to withdraw from the Paris Agreement."[66]   NMFS concluded that the measures noted in the Petition were not new information because they did "not change the overall conclusion in the final listing rule that current mechanisms do not effectively regulate GHG emissions, which are contributing to global climate change and associated modifications to ringed seal habitat."[67]

Ultimately, NMFS found that the petition did "not present new information or analyses that had not been previously considered and therefore does not present substantial scientific or commercial information indicating that the petitioned action may be warranted."[68]  Plaintiffs filed suit challenging the determination by NMFS pursuant to the Administrative Procedure Act.[69]

## II.   LEGAL STANDARD

"Agency decisions under ESA are governed by the Administrative Procedure Act, which requires an agency action to be upheld unless it is found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"[70]  "The court is not empowered to substitute its judgment for that of the agency."[71]   "Agency action

---

[66] *Id.* at 76026.
[67] *Id.* at 76026–27.
[68] *Id.* at 76018.
[69] Docket 1 at ¶ 9.
[70] *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)).
[71] *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

*State of Alaska, v. National Marine Fisheries Service*          Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge                                                    Page 11

Case 3:22-cv-00249-JMK   Document 44   Filed 05/20/24   Page 18 of 25

should be overturned only when the agency has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'[72] Essentially, the Court asks "whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made."[73]

## III. DISCUSSION

Plaintiffs allege that NMFS applied the wrong legal standard by (1) failing to credit new information from USFWS' analysis, (2) failing to credit AR5's new information, and (3) failing to credit new biological information.[74] NMFS posits that the Petition provided largely "repackaged and recycled arguments and evidence that had already been thoroughly considered in NMFS's Listing Rule."[75] The Court examines each issue in turn.

### A. Analysis from USFWS' Pacific Walrus Decision

Plaintiffs argue that USFWS' decision not to list the Pacific walrus stands in conflict with NMFS' 90-Day Finding and that, because "reasonable scientists disagree," the 90-Day Finding should be vacated.[76] Specifically, Plaintiffs argue that because

---

[72] *Pac. Coast Fed'n of Fishermen's Ass'n, Inc.*, 265 F.3d at 1034 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

[73] *Id.* (quoting *Natural Resources Defense Council v. United States Dep't of the Interior*, 113 F.3d 1121, 1124 (9th Cir. 1997)).

[74] Docket 26 at 22–35.

[75] Docket 28 at 13.

[76] Docket 26 at 26.

USFWS determined "beyond 2060 the conclusions concerning the impacts of the effects of climate change and other stressors on the Pacific walrus population are based on speculation, rather than reliable prediction," that NMFS should similarly limits its foreseeable future analysis under the ESA.[77]  NMFS responds  that no conflict exists between USFWS' Pacific walrus decision and NMFS' Arctic ringed seal decision.

As discussed above, the 90-Day Finding evaluated the Petition's reliance on USFWS' Pacific walrus decision.   NMFS noted "USFWS explained that it had high certainty that sea ice availability will decline as a result of climate change, but it had less certainty, particularly further into the future, about the magnitude of effect that climate change will have on the full suite of environmental conditions (e.g., benthic production), or how the species will respond to those changes."[78]  The 90-day Finding explained that much of USFWS' uncertainty came from how the Pacific walrus would respond to changed environmental conditions, "noting that changes in the timing of migration, amount of time spent on land, and time spent swimming to access foraging grounds are some of the changes in behavior that have already been observed."[79]

NMFS found that the Petition provided no information indicating that Arctic ringed seals have the behavioral flexibility to persist despite drastic reduction in ice and snow cover.[80]  As discussed in both the 90-Day Finding and the Listing Decision, Arctic

---

[77] *Id.* at 25.
[78] ENDANGERED AND THREATENED WILDLIFE; 90-DAY FINDING ON A PETITION TO DELIST THE ARCTIC SUBSPECIES OF RINGED SEAL UNDER THE ENDANGERED SPECIES ACT, 85 Fed. Reg. at 76022.
[79] *Id.*
[80] *Id.*

*State of Alaska, v. National Marine Fisheries Service*          Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge                                                Page 13

Case 3:22-cv-00249-JMK   Document 44   Filed 05/20/24   Page 20 of 25

ringed seals require access to ice with suitable depths of snow to create their subnivean

birth lairs, an essential component for a key life stage, namely birthing and raising pups.[81]

Deference to NMFS' decision to treat Arctic ringed seals differently than USFWS treated

Pacific walruses under the ESA is appropriate based on NMFS' technical expertise. NMFS

provided a rational connection between the facts it observed and its conclusion—namely

that Arctic ringed seals require access to sufficient snow cover on top of stable ice, while

Pacific walruses do not have such a requirement; therefore, NMFS' 90-day Finding should

not be vacated based on USFCWS' Pacific walrus decision.

## B.    IPCC's AR5 Modeling

Plaintiffs argue that NMFS failed to credit evidence from AR5 and

mistakenly continued to rely on AR4.[82] Ultimately, Plaintiffs argue that AR5 demonstrates

so much uncertainty in climate projections at the turn of the century that NMFS must

consider delisting the Arctic ringed seal.[83] NMFS responds that the modeling provided in

AR4 (used in the Listing Decision) and AR5 (relied on by Plaintiffs in the Petition) provide

consistent projections with the exception of RCP 2.6.[84] NMFS further argues that no

reasonable scientist would rely on RCP2.6.[85]

From the outset, the Court is wary of Plaintiffs' conclusion that delisting the

Arctic ringed seal may be warranted because AR5 demonstrates uncertainty in climate

---

[81] *Id.* at 76023; ENDANGERED AND THREATENED SPECIES; THREATENED STATUS FOR THE ARCTIC, OKHOTSK, AND BALTIC SUBSPECIES OF THE RINGED SEAL AND ENDANGERED STATUS FOR THE LADOGA SUBSPECIES OF THE RINGED SEAL, 77 Fed. Reg. at 76710–11, 28.
[82] Docket 26 at 28.
[83] *Id.* at 23.
[84] Docket 28 at 16–18.
[85] *Id.* at 18–20.

*State of Alaska, v. National Marine Fisheries Service*                    Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge                                                        Page 14

Case 3:22-cv-00249-JMK   Document 33   Filed 05/20/24   Page 21 of 25

projections at the turn of the century. Addressing similar challenges to climate modeling, the Ninth Circuit has stated that "[t]he fact that climate projections for 2050 through 2100 may be volatile does not deprive those projections of value in the rulemaking process."[86] Despite the Court's skepticism of Plaintiffs' underlying argument, the Court will examine NMFS' decision to exclude RCP 2.6 from consideration in its 90-Day Finding.

The Petition discusses the large variability between RCP 2.6, which uses low GHG emissions assumptions, and RCP 8.5, which uses high GHG emissions assumptions, and argues that "[t]he latest published research indicates that international and domestic policy commitments will result in the climate system following a trajectory more closely corresponding to the RCP 4.5 scenario."[87] As NMFS pointed out during oral argument, the focus of the Petition's argument was on RCP 4.5, not RCP 2.6.[88] In the 90-Day Finding, NMFS explained that the research the Petition relied on did not support the conclusion the Petition espoused but instead assessed what reductions in GHG emissions would be necessary to keep global warming below 2 degrees Celsius.[89] The 90-Day Finding further explained that the modeling done using AR5 matches the modeling previously relied on during the listing decision with the exception of RCP 2.6.[90] Thus, the 90-Day Finding

---

[86] *Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671, 680 (9th Cir. 2016).
[87] NMFS00092.
[88] Docket 37 at 27–28.
[89] ENDANGERED AND THREATENED WILDLIFE; 90-DAY FINDING ON A PETITION TO DELIST THE ARCTIC SUBSPECIES OF RINGED SEAL UNDER THE ENDANGERED SPECIES ACT, 85 Fed. Reg. at 76023–24.
[90] *Id.* at 76022 ("As we explained in the final listing rule, although the magnitude of the warming depends somewhat on the assumed emissions scenario, the trend is clear and unidirectional (77 FR 76723; December 28, 2012). This is also the case for climate model projections under the scenarios considered in the AR5, aside from a scenario that assumes

*State of Alaska, v. National Marine Fisheries Service*
Order Denying Plaintiffs' Challenge
Case No. 3:22-cv-00249-JMK
Page 15

Case 3:22-cv-00249-JMK   Document 43   Filed 05/20/24   Page 22 of 25

explained not only that Petitioner's reliance on RCP 4.5 was unsupported by the authority on which Petitioner's cited, but that modeling in AR5 using RCP 4.5 was consistent with modeling in AR4. [91]

NMFS noted that RCP 2.6 "assumes unprecedented global GHG emissions reductions and new technologies."[92] In fact, NMFS characterizes RCP 2.6 as an "aggressive mitigation scenario," in which GHG emissions start declining by 2030 and negative GHG emissions are achieved by 2080.[93] However, the Petition failed to provide any evidence that GHG emissions would be dramatically reduced in the future[94] and "current global annual emissions trends have been described as consistent with high-end emissions scenarios."[95] NMFS reiterated that some of the scenarios used in AR5, like RCP 2.6, were investigated to examine what GHG emissions scenarios could be implemented to "avoid dangerous and potentially irreversible climate change," but the IPCC did not attach any probability to RCP 2.6.[96] Because current trends indicate there will be continued high GHG emissions and the Petition provided no evidence to support a dramatic, worldwide shift in emissions contemplated in RCP 2.6, it was reasonable for

---

unprecedented global GHG emissions reductions and new technologies (and has no equivalent in the AR4 scenarios).").

[91] *Id.*

[92] *Id.*

[93] Docket 28 at 18 (citing REF02459).

[94] ENDANGERED AND THREATENED WILDLIFE; 90-DAY FINDING ON A PETITION TO DELIST THE ARCTIC SUBSPECIES OF RINGED SEAL UNDER THE ENDANGERED SPECIES ACT, 85 Fed. Reg. at 76026. ("However, the petition does not provide any evidence that the goals of the Paris Agreement will be met, and on November 4, 2019, the U.S. Secretary of State submitted formal notification to the United Nations of United States' intent to withdraw from the Paris Agreement.").

[95] *Id.* at 76023–24.

[96] Docket 37 at 27.

*State of Alaska, v. National Marine Fisheries Service*          Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge                                                    Page 16

Case 3:22-cv-00249-JMK   Document 43   Filed 05/20/24   Page 23 of 25

NMFS to remove RCP 2.6 from consideration when evaluating whether AR5 provided new information that would warrant delisting the Arctic ringed seal.[97]  Therefore, NMFS' 90-Day Finding should not be vacated based on its exclusion of RCP 2.6.

## C.    Population Data

Plaintiffs argue that NMFS improperly disregarded new "biological data" indicating that "observed changes in sea ice extent and duration have not resulted in detectable corresponding reductions in ringed seal population size or effects to ringed seal population health."[98]  NMFS responds by highlighting the analysis in the 90-Day Finding and final listing decision.[99]

The 90-Day Finding explained that NMFS' decision to list the Arctic ringed seal was based on habitat modification projected to take place decades in the future.[100]  The 90-Day Finding explained that the Arctic ringed seal population was estimated to be in the millions at the time of the final listing decision.[101]  The 90-Day Finding ultimately concluded that current data indicating that Arctic ringed seal populations remain in the millions is consistent with the information considered during the final listing decision, and therefore is not new information.[102]  Again, NMFS provided a reasonable connection

---

[97]    ENDANGERED AND THREATENED WILDLIFE; 90-DAY FINDING ON A PETITION TO DELIST THE ARCTIC SUBSPECIES OF RINGED SEAL UNDER THE ENDANGERED SPECIES ACT, 85 Fed. Reg. at 76023–24.
[98]    Docket 26 at 33–34 (citing NMFS00094).
[99]    Docket 28 at 24–26.
[100]    ENDANGERED AND THREATENED WILDLIFE; 90-DAY FINDING ON A PETITION TO DELIST THE ARCTIC SUBSPECIES OF RINGED SEAL UNDER THE ENDANGERED SPECIES ACT, 85 Fed. Reg. at 76023–25.
[101]    Id. at 76024.
[102]    Id.

State of Alaska, v. National Marine Fisheries Service                                          Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge                                                                                        Page 17

Case 3:22-cv-00249-JMK   Document 44   Filed 05/20/24   Page 24 of 25

between the facts observed and its conclusion and, under the highly deferential standard applicable here, the Court finds no reason to vacate NMFS' 90-Day Finding.

Having found NMFS' 90-Day Finding provided a reasonable explanation concerning the USFWS decision, the AR5 modeling and the updated population data, the Court hereby **DENIES** Plaintiffs challenge. The 90-Day Finding is upheld.

## IV. CONCLUSION

For the reasons stated above Plaintiffs' challenge is **DENIED**.

IT IS SO ORDERED this 20th day of March, 2024, at Anchorage, Alaska.


　　　　　　　　　　　　　　*/s/ Joshua M. Kindred*
　　　　　　　　　　　　　　JOSHUA M. KINDRED
　　　　　　　　　　　　　　United States District Judge

*State of Alaska, v. National Marine Fisheries Service*　　　　　　　Case No. 3:22-cv-00249-JMK
Order Denying Plaintiffs' Challenge　　　　　　　　　　　　　　Page 18

Case 3:22-cv-00249-JMK　Document 44　Filed 03/20/24　Page 25 of 25